IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, a Pennsylvania Corporation, | Civ. No.08-1375-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive Oregon corporation, | |
| Defendants. | |
| THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon | |

corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive Oregon corporation; and BAE SAN DIEGO SHIP REPAIR, INC., a California corporation,

        Third-Party Plaintiffs,

        v.

AGRICULTURAL INSURANCE COMPANY, an Ohio corporation; AMERICAN CENTENNIAL INSURANCE COMPANY, a Delaware corporation; CHICAGO INSURANCE COMPANY, an Illinois corporation; CONTINENTAL INSURANCE COMPANY, a Pennsylvania corporation; EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; GRANITE STATE INSURANCE COMPANY, a Pennsylvania corporation; HARTFORD INSURANCE COMPANY, a Connecticut corporation; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a New Jersey corporation; INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and CERTAIN LONDON MARKET INSURANCE COMPANIES, each a foreign corporation; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, a Pennsylvania corporation; NEW ENGLAND REINSURANCE COMPANY, a Connecticut corporation; OLD REPUBLIC INSURANCE COMPANY, an Illinois corporation; PACIFIC MUTUAL MARINE OFFICE INC., a New York corporation; RELIANCE INSURANCE COMPANY, a

Pennsylvania corporation; ROYAL INDEMNITY COMPANY, a Delaware corporation; ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation; TWIN CITY FIRE INSURANCE COMPANY, an Indiana corporation; WATER QUALITY INSURANCE SYNDICATE, a syndicate of foreign corporations; WEST COAST MARINE MANAGERS, INC., a New York corporation; and JOHN DOE INSURANCE COMPANIES,

        Third-Party Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

This motion concerns excess insurance policies issued by Federal Insurance Company ("Federal"), Chicago Insurance Company ("Chicago"), and Arrowood Indemnity Company ("Arrowood") (collectively "Excess Insurers") to Northwest Marine Iron Works ("NWMIW") covering, generally, property damage in an amount greater than that covered by NWMIW's primary insurance policies.  This dispute arises in the context of an action for declaratory judgment filed by Century Indemnity Company ("Century") against The Marine Group, LLP ("TMG"), Northwest Marine, Inc. ("NWM"), and NWMIW.  Century sought declaratory relief establishing its rights and duties with respect to an insurance policy issued to NWMIW.  BAE Systems San Diego Ship Repair ("BAE") joined with the original plaintiffs (collectively "TPPs") in asserting third-party claims against numerous insurance companies alleging a claim for breach of contract and seeking declaratory judgment regarding the insurers' duties to defend and indemnify.

Excess Insurers currently move for summary judgment on TPPs' claim for breach of contract

and request for declaratory judgment on the ground that neither is ripe for adjudication. These issues are not ripe, Excess Insurers contend, because TPPs have not and cannot allege exhaustion of the underlying insurance policies. TPPs respond that the court has the discretion to consider the claim for declaratory judgment and that fairness and judicial economy counsel that the court should exercise that discretion.

The court concludes that TPPs' breach of contract claim is not ripe and should be dismissed without prejudice. The court also concludes that TPPs' request for declaratory judgment against Excess Insurers is ripe for adjudication and the court thus exercises its discretion to consider this request.

### *Legal Standard*[1]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2011). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of

---

[1] Although Excess Insurers refer to this motion as a motion to dismiss, the legal standard stated in their briefing is for a motion for summary judgment. TPPs noted this discrepancy and themselves set forth the standard for a motion for summary judgment. In doing so, TPPs noted that a motion for dismissal under 12(b)(6) for failure to state a justiciable claim that relies on evidence outside of the pleadings must be construed as a motion for summary judgment. The court agrees. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.").

a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, deference to the nonmoving party has limits. The nonmoving party must set forth "specific facts showing a *genuine* issue for trial." FED. R. CIV. P. 56(e) (2008) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

*Factual Background*

The facts essential to determination of this motion are not disputed. TPPs are potentially responsible parties to an Environmental Protection Agency ("EPA") action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for environmental damage at the Portland Harbor Superfund Site ("the Site"). The EPA has estimated the amount of damages

related to this action as exceeding $1 billion. This figure does not include "costs of investigation and Natural Resource Damages ("NRDs")." (TPP Opposition 3.) According to TPPs, these costs have the potential to equal remediation costs and, thus, the total liability could be as great as $2 billion or more. *Id*. The EPA has identified at least 141 PRPs who may bear liability for the underlying action. (Eckman Declaration ("Decl.") Exhibit ("Ex.") C.) According to a document issued by the Oregon Department of Environmental Quality ("DEQ") in March 2010, the EPA is committed to issue its decision in 2012. (Rycewicz Decl., Ex. 3 at 21.)

TPPs allegedly hold excess insurance policies issued by Excess Insurers. Each of the policies in question provides coverage where the underlying policy or policies exhaust $20.5 million in coverage.

*Discussion*

In *Hoffman Construction Co. of Alaska v. Fred S. James & Co., of Oregon*, 313 Or. 464, 836 P.2d 703 (1992), the Oregon Supreme Court gave a concise description of the different tiers of insurance that an insured might possess:

> Liability insurance policies frequently are arranged in tiers, with each level of policy designed to "kick in" when the coverage provided by the lower level of insurance is exhausted. The general nomenclature surrounding this phenomenon labels an insured's basic insurance as the "primary" insurance, the insured's next level of insurance (that covers risks involving amounts in excess of the primary insurance) as "excess" insurance, and the insured's final level of insurance (that covers risks only after and to the extent that lower levels do not) as "umbrella" insurance.

*Id.* at 466 n.1. Here, Excess Insurer's policies are considered "excess" policies, the level above "primary," and they provide coverage for damages in an amount greater than $20.5 million. Liability typically attaches under excess policies "only after a predetermined amount of primary coverage has been exhausted." *Industrial Finishes & Systems, Inc. v. American Universal Insurance Co.*, 79 Or.

App. 614, 618, 720 P.2d 382 (1986).

The duty to indemnify is distinct from the duty to defend. *North Pacific Insurance Co. v. Wilson's Distributing Service, Inc.*, 138 Or. App. 166, 170, 908 P.2d 827 (1995). That said, "[e]ven when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Ledford v. Gutoski*, 319 Or. 397, 403, 877 P.2d 80 (1994). In other words, an insurer might find its rights impacted by litigation in which it was not actively involved.

I.      Breach of Contract

Excess Insurers argue that TPPs' breach of contract claim against them must be dismissed because, until the underlying policies are exhausted, their duty to indemnify has not yet been triggered and, accordingly, cannot be breached. Excess Insurers note that because the primary insurers have denied tender,[2] it is not possible that the underlying policies have been exhausted. They point out that TPPs did not plead exhaustion of the underlying policies, and they could not plead it as a factual matter. TPPs respond, rather summarily, that Excess Insurers' responsive pleading amounts to an "unequivocal repudiation of their intent to perform when performance is due." (TPPs' Response 1 n.2.) They argue that whether unequivocal repudiation has occurred is a question of fact for the jury that cannot be decided by the court on summary judgment.

Both TPPs and Excess Insurers cite *Paulsell v. Cohen*, CV-00-1175-ST, 2002 U.S. Dist. LEXIS 20386 (D. Or. May 22, 2002), for its statement identifying the point at which a party will be deemed to have repudiated a contract: "The party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. Oregon case law clarifies

---

[2] The primary insurers have denied tender with the exception of Argonaut.

that a repudiation requires a party to refuse positively, unconditionally, unequivocally, distinctly and absolutely to perform his or her contractual obligations." *Id*. at *24.

The repudiation must be direct and final, and "[t]he assertion of affirmative defenses does not constitute such a communication." *Maryland Casualty Co. v. W.R. Grace & Co.*, 1996 U.S. Dist. LEXIS 7795, at *5 (S.D.N.Y. June 7, 2006). Thus, "[i]n instances where the underlying policies have not been exhausted, but the excess insurer has repudiated its duty 'prior to the time for performance . . . a declaratory judgment on the coverage obligations of certain defendant-insurers maybe appropriate, [although] a breach of contract action is premature.'" *Century Indemnity Co. v. Marine Group, LLC*, 2009 U.S. Dist. LEXIS 90817, at *14-15 (D. Or. Sept. 29, 2009) (quoting *Maryland Casualty Co.,* 1996 U.S. Dist. LEXIS 7795, at *5). Accordingly, TPPs' breach of contract claim against Excess Insurers is not ripe and is thus dismissed without prejudice.

II.     Declaratory Judgment

TPPs also seek declaratory judgment regarding Excess Insurers' duty to indemnify them in the underlying environmental action. Excess Insurers argue that this request is not ripe because it relies on speculative future events, namely the possibility that damages attributable to TPPs will exceed the policy limits of the primary policies, thus implicating the coverage provided in the excess policies. Excess Insurers also argue that such declaratory judgment would unfairly impose legal costs in the absence of a duty under the excess policies and would run afoul of principles of judicial economy providing that courts should not expend resources adjudicating issues that are not properly before them. TPPs respond that this request is governed by the Declaratory Judgment Act, which vests federal courts with the discretion to issue declaratory judgments.

>The Declaratory Judgments Act states:
>
>In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). Accordingly, the court must determine if there is a case or controversy and, if so, whether in its discretion to exercise jurisdiction. *American States Insurance Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

  A. *Case or Controversy*

As a preliminary matter, the court notes that a dispute between an insurer and its insured is generally considered a case or controversy for purposes of conferring jurisdiction. *See Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220, 1222 n.2 (9th Cir. 1998) ("Indeed, we have consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." (citing *American National Fire Insurance v. Hungerford*, 53 F.3d 1012, 1015-1016 (9th Cir. 1995); *Kearns*, 15 F.3d at 144)). However, an insurance dispute may be insufficiently ripe to qualify as a proper case or controversy.

"The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). A court must consider both constitutional and prudential components: "The constitutional component focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement; the prudential component, on the other hand, focuses on whether there

is an adequate record upon which to base effective review." *Portman*, 995 F.2d at 902-903 (citing *Abbott Laboratories*, 387 U.S. at 149; other citation omitted).

There is no clear consensus as to whether a claim against an excess insurer is ripe for adjudication where the underlying primary policies have not yet been exhausted. There is some agreement, however, that a claim is ripe where there is a substantial likelihood that the dispute will reach the excess policies. This has also been expressed as a "practical likelihood." *See Associated Indemnity Corp. v. Fairchild Industries, Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citation and internal quotation marks omitted) ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur[]. Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.").

This standard was applied in *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154 (2d Cir. 2001), where the court determined that a substantial likelihood existed that the excess insurers' policies would be reached and, therefore, the claims were appropriate for adjudication under the Declaratory Judgments Act. In *E.R. Squibb*, the excess insurance policies had "excess of primary limits" between $5 million and $50 million. At the time the excess insurers moved for summary judgment on this issue, the insured "had incurred approximately $100 million in damages," and hundreds of additional claims remained pending against the insured, claims for which there was evidence would amount to approximately $100 million more in damages. On this record, the court concluded that the insured's "claims against the high level excess insurers presented an actual case or controversy." *Id.* at 178.

Other courts have concluded that claims against excess insurers were ripe even if the underlying policies had not been exhausted. In *Connecticut General Life Insurance Co. v. Zurich American Life Insurance Co.*, X030105102685, 2003 Conn. Super. LEXIS 910 (Sup. Ct. Conn. Mar. 28, 2003), the court concluded that the claims against excess insurers were ripe. There, the insured had several excess policies covering damage amounts in excess of $1 million and $10 million. The insured had already paid out $2 million in damages and the underlying claims sought an additional $13 million. The court concluded that it was "reasonable to anticipate that the 'magnitude' of potential claims against the plaintiffs [would] trigger excess coverage . . . ." *Id.* at *12.

The Superior Court of Delaware characterized the ripeness inquiry as follows:

In determining whether an issue is ripe for adjudication, the Court must balance two competing interests. First, the Court must consider the purpose of the Declaratory Judgment Act, to provide early and comprehensive resolutions of disputes. This interest must be weighed against the policies of judicial economy and restraint.

*Hoechst Celanese Corp. v. National Union Fire Insurance Co. of Pittsburgh*, 623 A.2d 1133, 1137 (Sup. Ct. Del. 1992). The court stated that "absolute proof that an excess insurer's policies will be triggered" was not necessary, but that there must be "a reasonable likelihood that the claims will mature as to that defendant." *Id.* In that case, however, there was evidence that expenditures "easily exceed[ed], several times over, the $20 million cutoff suggested by the moving defendants." *Id*. at 1138.

Other courts have concluded to the contrary. In *Iolab Corp. v. Seaboard Surety Co.*, 15 F.3d 1500 (9th Cir. 1994), the Ninth Circuit considered whether claims against excess insurers were properly dismissed where the primary insurance policies had not been exhausted. It observed that, "under California law, it is clear that 'all primary insurance must be exhausted before liability

attaches under a secondary policy.'" *Id.* at 1504. In *Iolab*, the underlying claims had settled for $14.5 million. The insured brought a claim for indemnification against its primary and excess insurers. The court noted that the "aggregate primary coverage" for the period in question amounted to $36 million, substantially more than the amount of the settlement. The Ninth Circuit affirmed the district court's dismissal of the claims against the excess insurers, first, because "Iolab could not have sued the excess insurers for breach of contract until the legal obligations of the primary insurers had been determined and the excess policies had been triggered." It also held that the district court had not "abuse[d] its discretion in refusing to treat Iolab's action as a request for declaratory relief[,]" because a claim for declaratory relief was not tenable under California law: "Regardless of how Iolab's claim against the excess insurers is labeled, requiring the excess insurers to defend against Iolab's claim would impose on the excess insurers the unnecessary cost of litigating a claim that may never trigger excess coverage and thereby would frustrate the policy adopted by California courts." *Id*. at 1505.

In support of their argument, Excess Insurers also submit an order issued by the Multnomah County Circuit Court that, without analysis, summarily granted an excess insurer's motion to dismiss claims against it for failure to exhaust the primary insurance policies. By way of explanation the court stated: "The Court bases this ruling on and agrees with each and every argument made by Underwriters in their moving and reply papers." (Eckman Decl., Ex. M at 75.) As such, Excess Insurers also submitted the briefing to the motion to dismiss. On review of the briefing, the court determines the following. According to the moving defendants, the plaintiff Schnitzer Investment Corporation ("Schnitzer") was found liable for environmental contamination on its property. The damage was assessed as, at most, $3.2 million, and Schnitzer received a settlement from a prior

owner of the polluted site in the amount of $2.3 million. Accordingly, Schnitzer's remaining liability was $900,000. The excess insurer, Certain Underwriters at Lloyd's of London, argued that it should be dismissed from the indemnity action because Schnitzer possessed $4 million in primary insurance and there was thus no possibility that the primary insurance would be exhausted and the excess policies reached. Schnitzer responded with a complex discussion of horizontal versus vertical exhaustion and argued that the ultimate liability had not yet been determined.

The issues presented in *Schnitzer* differ in material respects from the issues in the present case, and Excess Insurers have provided the court little guidance as to how the bare order of the county circuit court informs the decision to be made here. To the extent that the court ruled that the excess insurers were properly dismissed for failure to exhaust the primary policies, this court recognizes that exhaustion is typically a prerequisite to imposing a duty to indemnify on an excess insurer. However, this court declines to closely analyze the facts of another complex insurance dispute to glean the particular yet unexpressed conclusions of a court that lacks binding or persuasive authority over it.

Here, it is undisputed that the primary policies underlying the excess policies issued by Excess Insurers have not yet been exhausted. The court's task, therefore, is to ascertain whether the likelihood that the excess policies will be triggered is sufficient to confer jurisdiction with respect to this request for declaratory judgment. In the absence of a firm standard, the court observes that other courts have characterized it as a substantial or reasonable likelihood standard.

Here, the potential liability alleged is upwards of $2 billion. In light of the large number of potentially liability parties, there is certainly a possibility that TPPs' ultimate liability will be less than the triggering policy limits of the excess insurance policies issued by Excess Insurers. There

is an equal if not greater possibility, however, that TPPs will bear a substantially larger share of the liability. In light of the enormity of the potential liability at issue, and the relative smallness of the triggering coverage amount, the court concludes that it is substantially likely that the excess policies will be triggered and the claims asserted present a genuine case or controversy with respect to Excess Insurers.

### B.    Discretion

If a court determines that a case or controversy exists, it must next determine whether, in its discretion, it is appropriate to consider a request for declaratory judgment. "The Supreme Court has provided guidance for the exercise of the district court's discretionary decision whether to entertain declaratory relief. Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *American States Insurance Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (citing *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942); quoting *Chamberlain v. Allstate Insurance Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).

The court considers its discretionary decision in light of the nature of the underlying lawsuit and the particular aims of the Oregon Environmental Cleanup Assistance Act and CERCLA. First, with respect to judicial administration, the inclusion and retention of Excess Insurers as parties to this suit serves the interest of judicial economy. On balance, dismissal of Excess Insurers presents a burden on judicial resources. Second, issues of comity have not been raised by the parties and will not be raised by the court's exercise of declaratory relief. Third, the court does not find Excess Insurers continued inclusion in the lawsuit unfair to the litigants. Having determined that there is a genuine case or controversy between TPPs and Excess Insurers, it follows that it is not unfair to require their participation in the current action. For these reasons, the court elects to exercise its

discretion to entertain declaratory relief.

*Conclusion*

For the reasons stated, Excess Insurers' Motion to Dismiss (#311) is GRANTED in part and DENIED in part.

DATED this 27th day of January, 2011.


                                                 /s/ John V. Acosta  
                                               JOHN V. ACOSTA  
                                    United States Magistrate Judge