IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, a Pennsylvania Corporation, | Civ. No. 3:08-cv-01375-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive Oregon corporation, | |
| Defendants. | |
| THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; NORTHWEST MARINE, INC., an inactive Oregon corporation, as affiliated with Northwest Marine Iron Works; NORTHWEST MARINE IRON WORKS, an inactive | |

Oregon corporation; and BAE SAN DIEGO
SHIP REPAIR, INC., a California
corporation,

                  Third-Party Plaintiffs,

           v.

AGRICULTURAL INSURANCE
COMPANY, an Ohio corporation;
AMERICAN CENTENNIAL INSURANCE
COMPANY, a Delaware corporation;
CHICAGO INSURANCE COMPANY, an
Illinois corporation; CONTINENTAL
INSURANCE COMPANY, a Pennsylvania
corporation; EMPLOYERS MUTUAL
CASUALTY COMPANY, an Iowa
corporation; FEDERAL INSURANCE
COMPANY, an Indiana corporation;
GRANITE STATE INSURANCE
COMPANY, a Pennsylvania corporation;
HARTFORD INSURANCE COMPANY, a
Connecticut corporation; INSURANCE
COMPANY OF THE STATE OF
PENNSYLVANIA, a New Jersey
corporation; INSURANCE COMPANY OF
NORTH AMERICA, a Pennsylvania
corporation; CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON, and CERTAIN
LONDON MARKET INSURANCE
COMPANIES, each a foreign corporation;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, a
Pennsylvania corporation; NEW
ENGLAND REINSURANCE COMPANY,
a Connecticut corporation; OLD REPUBLIC
INSURANCE COMPANY, an Illinois
corporation; PACIFIC MUTUAL MARINE
OFFICE INC., a New York corporation;
RELIANCE INSURANCE COMPANY, a
Pennsylvania corporation; ROYAL
INDEMNITY COMPANY, a Delaware
corporation; ST. PAUL FIRE & MARINE

2

INSURANCE COMPANY, a Minnesota
corporation; TWIN CITY FIRE
INSURANCE COMPANY, an Indiana
corporation; WATER QUALITY
INSURANCE SYNDICATE, a syndicate of
foreign corporations; WEST COAST
MARINE MANAGERS, INC., a New York
corporation; and JOHN DOE INSURANCE
COMPANIES,

         Third-Party Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

     In its motion for reconsideration, Century Indemnity Company ("Century") asks the court to both clarify and reconsider its order of January 27, 2012, wherein the court ruled that certain insurers' duty to defend was not excused by subsequent endorsements.  Century seeks clarification that the court's ruling did not modify the terms of the endorsements and seeks reconsideration of its ruling that the duty to defend was still operative under the policy.  Third-party plaintiffs The Marine Group, Northwest Marine, Inc., Northwest Marine Iron Works, and BAE System San Diego Ship Repair, Inc. ("TPPs") oppose the motion, arguing that the court's ruling requires neither clarification nor reconsideration.  The court, having reviewed its decision and found it sufficiently clear and free of error, denies the motion for reconsideration.

*Legal Standard*

     Motions for reconsideration under Rules 59(e) and 60(b) apply generally the same standard. *Automobile Ins. Co. of Hartford, Connecticut v. Abel*, No. 08-CV1004-AC, 2010 WL 5014408, at *2 (D. Or. Dec. 3, 2010) (citing *Fidelity Federal Bank, F.S.B. v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) and *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir. 1991).

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### Discussion

The endorsement in question has two sections that are the subject of this motion. The first involves a deductible and is hereinafter referred to as "the deductible endorsement." The second concerns an agreement with a claims servicing organization. The court's interpretation of each will be addressed in turn.[1]

I.    The Deductible Endorsement

Century seeks clarification that the court's ruling does not interfere with the terms of the deductible endorsement or its operation. Specifically, Century seeks to reaffirm that the insurers may seek reimbursement from the insured for payments not exceeding the deductible and that the insured must pay the deductible per occurrence up to the deductible-annual aggregate. TPPs respond that the court's order does not modify or undermine operation of the deductible endorsement and that any ruling regarding amounts due under this endorsement would be premature.

In its order, the court described the terms of the deductible endorsement as follows:

INA issued to NWMIW two policies relevant to this motion. The relevant policy language is identical unless otherwise noted. The deductible endorsement provides:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of [bodily injury or property damage] to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on

---

[1] For more detailed treatment of the endorsement language in question, refer to the court's Opinion and Order (#392).

account of such bodily injury or property damage . . . .

> (Rycewicz Decl., Ex. 1 at 3; Ex. 2 at 2.)  The relevant portions of the deductible
> endorsement state[] that INA has an obligation to pay damages only in excess of the
> stated deductible; that if the insured does not pay damages up to the deductible, INA
> will pay those damages but will be entitled to reimbursement by the insured; and that
> the insured must pay the deductible for each separate occurrence, though that amount
> is limited by a maximum annual obligation, referred to in the policy as the
> "deductible-annual aggregate."  (Rycewicz Decl. Ex. 1, 20-23; Ex. 2, 17-20.)

(Opinion and Order (#392) 14-15.)  The court concluded that the deductible endorsement did not

fundamentally alter Insurers' duty to defend: "to the extent the deductible endorsement modifies the

relationship between the insurer and the insured by establishing a deductible and creating a system

of payment based on that deductible, the deductible endorsement does not interfere with the duty to

defend set forth under the original policy."  *Id*. at 17.

In its January 27, 2012, ruling, the court merely analyzed the impact of the deductible

endorsement on the duty to defend contained in the original policy.  The court concluded that it did

not modify or undermine that duty.  This was the extent of the court's ruling with respect to the

deductible endorsement.  The court did not consider the enforceability of the deductible endorsement

in this case, and declines to clarify that which was not before it previously.  Furthermore, in so

ruling, the court implicitly identified the deductible endorsement as a true deductible, rather than a

self-insured retention.

At oral argument on this motion, the parties referenced the distinction between a self-insured

retention and a deductible, a distinction that was raised in the briefing on the original motion but not

explicitly addressed by the court.  In their opening brief, TPPs pointed out that the content of the

deductible endorsement was consistent with a true deductible, rather than a self-insured retention.

A self-insured retention, in TPPs' characterization, must be paid before the insurer's duty to defend

arises; in the case of a deductible, the insured must pay a portion of the loss but is not obligated to exhaust the deductible before a defense is provided." (Memorandum (#299) at 26 (citing 2 Allan Windt, *Insurance Claims and Disputes* § 11:31, at 11-495 (5th ed 2007)).) This characterization is consistent with the Ninth Circuit's description of self-insured retentions: "It is well recognized that self-insurance retentions are the equivalent to primary liability insurance, and that policies which are subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Pacific Employers Ins. Co. v. Domino's Pizza*, 144 F.3d 1270, 1276-1277 (9th Cir. 1998).

In response, Century argued that under Oregon law "an insured must meet multiple deductibles and/or self insured retentions to obtain coverage for property damage that allegedly spans multiple policy periods." (Response (#332) at 21 (citing *Interstate Fire & Cas. Co. v. Portland Archdiocese*, 35 F.3d 1325 (9th Cir. 1994)).) It argued, further, that the record lacked evidence that the deductible per year was met for the policy years in question. In reply, TPPs argued that the language of the deductible endorsement did not establish payment of the deductible as a condition precedent to performing its duty to defend. In the court's view, treatment of the self-insured retention issue is implicit in its prior order and, in particular, in this statement: "The language of the deductible endorsement itself contemplates that the insurer will pay defense costs up front and, if appropriate, be entitled to seek reimbursement up to the deductible amount." (Opinion & Order (#392) at 19.) Indeed, the court interprets the deductible endorsement as providing for a true deductible, rather than a self-insured retention, as its language makes clear.

II.     The Claims Servicing Agreement

Century also seeks reconsideration of the court's ruling that, in the absence of evidence of

a claims servicing agreement, the duty to defend remains operative as set forth in the underlying policies. Century also argues that the court improperly imported a duty to defend into the endorsement which itself provides only for "investigation, defense or settlement services." Thus, Century argues, the endorsement provides for services that are less than those due under a duty to defend and the court's ruling calls upon Century to provide services greater than those provided under the insurance policy and all subsequent endorsements. TPPs respond that the court did not create a duty to defend where one did not exist, but rather ruled that the endorsement did not extinguish the duty to defend already in existence in the underlying policy.

At summary judgment, the court was called upon to consider whether the "claims servicing agreement" language in the endorsement excused Insurers from the duty to defend as outlined in the underlying policy. In general, this endorsement provides that so long as an agreement between the insured and a claims servicing organization remains in effect, the insurer has no duty to defend. The endorsement states: "Whereas the named insured has entered into a written agreement with a qualified claims servicing organization . . . it is understood and agreed that [INA] has no duty or obligation to provide investigation, defense or settlement services with respect to such claims or suits so long as such agreement with the claims service [sic] organization remains in effect." (Rycewicz Decl., Ex. 1 at 21; Ex. 2 at 18.) The court ruled that the endorsement's language was clear: "if no agreement with a claims servicing organization is in place, the duty to defend is placed on [the insurer]. Thus, in the absence of a claims servicing agreement, the insurer's duty to defend claims against the insured remains in place." (Opinion and Order 17.) Contrary to Insurers' claim, the court did not insert duty to defend language into the endorsement, but merely interpreted the effect of the endorsement as written.

Insurers also express their disagreement with the court's conclusion that, Insurers having failed to establish the existence of a claims servicing agreement that would trigger application of this endorsement and extinguish the duty to defend in the underlying policy, the original duty to defend is triggered. The court held that because the insurer bears the burden of proving that an exclusion applies, and Insurers having failed to present any evidence that a claims servicing agreement was in effect, TPPs were entitled to summary judgment that this endorsement did not extinguish the duty to defend. Insurers do not provide a basis upon which to conclude that the ruling was erroneous, beyond expressing their general disagreement with the court's conclusion. As such, the motion to reconsider is denied.

III.    New Evidence

Shortly before hearing on this matter, third-party defendant Agricultural Insurance Company ("Agricultural") submitted a declaration with numerous attached exhibits allegedly relevant to this motion. *See Prange Declaration* (Docket #413). At hearing, counsel for Agricultural stated that the evidence had been overlooked in reviewing discovery materials. Under Rule 60(b)(2), a court may consider "newly discovered evidence that, with reasonable diligence, could not have been discovered [earlier]." FED. R. CIV. P. 60(b)(2). Notably, "[e]vidence is not newly discovered if it was in the moving party's possession or the moving party could have, with due diligence, discovered and produced the evidence to the court prior to, or at the time of, the hearing." *Daul v. PPM Energy, Inc.*, Case No.: 08-CV-524-AC, 2010 U.S. Dist. LEXIS 107630, 6-7 (D. Or. Oct. 5, 2010) (citing *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985)). Here, the evidence was admittedly in Argonaut's possession prior to and at the time of the summary judgment hearing and had simply been overlooked until its recent discovery. This fails to meet the standard

required for the admission of new evidence and the court will not consider it further.

*Conclusion*

For the reasons stated, Century's motion to reconsider (#397) is DENIED.

IT IS SO ORDERED.

DATED this 3rd day of December, 2012.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge

OPINION AND ORDER                    9                    {KPR}