UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CENTURY INDEMNITY COMPANY,                          Case No.: 3:08-cv-1375-AC
a Pennsylvania Corporation,

                                                    OPINION AND ORDER
                        Plaintiff,

            v.

THE MARINE GROUP, LLC, a California
limited liability company, as affiliated with
Northwest Marine, Inc.; NORTHWEST
MARINE, INC., an inactive Oregon
corporation, as affiliated with Northwest
Marine Iron Works; NORTHWEST
MARINE IRON WORKS, an inactive
Oregon corporation,

                        Defendants.

THE MARINE GROUP, LLC, a California
limited liability company, as affiliated with
Northwest Marine, Inc.; NORTHWEST
MARINE, INC., an inactive Oregon
corporation, as affiliated with Northwest
Marine Iron Works; NORTHWEST
MARINE IRON WORKS, an inactive
Oregon corporation; and BAE SAN DIEGO
SHIP REPAIR, INC., a California
corporation,

                Third-Party Plaintiffs,

      v

AGRICULTURAL INSURANCE
COMPANY, an Ohio corporation;
AMERICAN CENTENNIAL INSURANCE
COMPANY, a Delaware corporation;
CHICAGO INSURANCE COMPANY, an
Illinois corporation; CONTINENTAL
INSURANCE COMPANY, a Pennsylvania
corporation; EMPLOYERS MUTUAL
CASUALTY COMPANY, an Iowa
corporation; FEDERAL INSURANCE
COMPANY, an Indiana corporation;
GRANITE STATE INSURANCE
COMPANY, a Pennsylvania corporation;
HARTFORD INSURANCE COMPANY, a
Connecticut corporation; INSURANCE
COMPANY OF THE STATE OF
PENNSYLVANIA, a New Jersey
corporation; INSURANCE COMPANY OF
NORTH AMERICA, a Pennsylvania
corporation; CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON, and CERTAIN
LONDON MARKET INSURANCE
COMPANIES, each a foreign corporation;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, a
Pennsylvania corporation; NEW
ENGLAND REINSURANCE COMPANY,
a Connecticut corporation; OLD REPUBLIC
INSURANCE COMPANY, an Illinois

corporation; PACIFIC MUTUAL MARINE
OFFICE INC., a New York corporation;
RELIANCE INSURANCE COMPANY, a
Pennsylvania corporation; ROYAL
INDEMNITY COMPANY, a Delaware
corporation; ST. PAUL FIRE & MARINE
INSURANCE COMPANY, a Minnesota
corporation; TWIN CITY FIRE
INSURANCE COMPANY, an Indiana
corporation; WATER QUALITY
INSURANCE SYNDICATE, a syndicate
of foreign corporations; WEST COAST
MARINE MANAGERS, INC., a New York
corporation; and JOHN DOE INSURANCE
COMPANIES,

                Third-Party Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

       The parties to this action seek clarification on the proper standards and burdens of proof

applicable to the recovery of amounts expended in the defense of an environmental claim.  The

various insureds, third-party plaintiffs The Marine Group, LLC; Northwest Marine, Inc.; Northwest

Marine Iron Works; and BAE Systems San Diego Ship Repair, Inc. (collectively referred to as

"Marine"), seek reimbursement for defense costs from various insurers, including Agricultural

Insurance Company and Agricultural Excess and Surplus Insurance Company, now collectively

known as Great American Insurance Company ("Great American"); St. Paul Fire and Marine

Insurance Company ("St. Paul"); and  Insurance Company of North America,[1] who have not

_____

      [1] The court has determined that these three insurance companies have a duty to defend
Marine.  *Century Indem. Co. v. Marine Group*, 848 F. Supp. 2d 238, (D. Or. 2012).  To the extent
defense costs are sought from other insurance companies, the issue of whether those companies had

contributed to, or participated in, the defense of Marine with regard to the remediation of the Portland Harbor Superfund Site (collectively referred to as "Insurers"). Intervenor Argonaut Insurance Company ("Argonaut"), who voluntarily agreed to defend Marine and has expended millions of dollars in defense costs to date, seeks contribution from the Insurers for these defense costs. Argonaut is seeking reimbursement for amounts paid to independent counsel retained to represent Marine as well as for amounts paid to counsel representing Argonaut's interests.

The court finds[2] Argonaut and Marine must establish the expenses it seeks to recover are properly characterized as defense costs. In doing so, they may rely on the rebuttable presumption found in OR. REV. STAT. 465.480(7)(a). Once the expenses are properly identified as defense costs, Argonaut and Marine bear the burden of proof on the existence and amount of the claimed defenses costs, including documentation of the hours expended, and Insurers must prove the requested costs were unreasonable or unnecessary. With regard to independent counsel financed by Argonaut for Marine, Argonaut is entitled to rely on the statutory presumption found in OR. REV. STAT. 465.483(3)(a) that amounts paid to independent counsel and environmental consultants as defense costs at the regular and customary rates charged for environmental claims similar to the one at hand are reasonable. Marine is not entitled to recover pre-tender defense costs.

*Legal Standards*

Oregon law applies to actions addressing the existence of insurance coverage for the costs of investigating or remediating environmental contamination, and for costs incurred in defending a

---

a duty to defend still must be addressed.

[2]The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

suit against an insured for such costs, in all cases where the contaminated property is within the State

of Oregon.  OR. REV. STAT. 465.480(2)(a) (2013).  The obligation of an insurer to participate in the

defense of an environmental action is set forth at OR. REV. STAT. 465.480(3)(a), which provides:

> An insurer with a duty to pay defense or indemnity costs, or both, to an insured for
> an environmental claim under a general liability insurance policy that provides that
> the insurer has a duty to pay all sums arising out of a risk covered by the policy, must
> pay all defense or indemnity costs, or both, proximately arising out of the risk
> pursuant to the applicable terms of the policy, including its limit of liability,
> independent and unaffected by other insurance that may provide coverage for the
> same claim.

OR. REV. STAT. 465.480 governs the responsibilities between an insured and its insurers for

defense, investigation, and remediation costs incurred with regard to an environmental claim.  Where

more than one insurer provides coverage for such costs:

> An insurer that has paid all or part of an environmental claim may seek contribution
> from any other insurer that is liable or potentially liable to the insured and that has
> not entered into a good faith settlement agreement with the insured regarding the
> environmental claim.

OR. REV. STAT. 465.480(4)(a) (2013).  OR. REV. STAT. 465.480 provides the exclusive instructions

and limitations on the question of contributions between insurers in an environmental action.

"Contribution rights by and among insurers under this section preempt all common law contribution

rights, if any, by and between insurers for environmental claims."  OR. REV. STAT. 465.480(4)(d).

The Oregon legislature created rebuttable presumptions with regard to the characterization

of certain costs involved in environmental claims.   OR. REV. STAT. 465.480(7) provides:

> (a) There is a rebuttable presumption that the costs of preliminary assessments,
> remedial investigations, risk assessments or other necessary investigation, as those
> terms are defined by rule by the Department of Environmental Equality, are defense
> costs payable by the insurer, subject to the provisions of the applicable general
> liability insurance policy or policies.

(b) There is a rebuttable presumption that payment of the costs of removal actions or feasibility studies, as those terms are defined by rule by the Department of Environmental Quality, are indemnity costs and reduce the insurer's applicable limit of liability on the insurer's indemnity obligations, subject to the provisions of the applicable general liability policy or policies.

The existence of these rebuttable presumptions places the onus on the party requesting payment of defense costs to present evidence the costs requested fall within the parameters of the statute. The burden then shifts to the opposing party to rebut the presumption.

*Discussion*

I. Insured Seeking Reimbursement from Insurers

*A. Burden and Standard*

An insured seeking to recover defense costs from an insurer is proceeding under a breach of contract theory and is entitled to recover only what would have been received in the absence of such breach. *Northwest Pump & Equip. Co. v. American States Ins. Co.*, 141 Or. App. 210, 217 (1996). The insured has the burden of proof on the existence and amount of the claimed defense costs, which are then presumed to be reasonable and necessary, requiring the insurer to prove the defense costs were unreasonable and unnecessary.[3] *Ash Grove Cement Co. v. Liberty Mutual Ins. Co.*, No. 3:09-cv-00239-HZ, 2013 WL 4012708, at *8 (D. Or. Aug. 5, 2013). The insured, as the fee applicant, also bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Id*. at *10.

In *Ash Grove*, Judge Hernandez explained an insured meets its burden by showing:

(1) that the costs and fees sought are associated with actions conducted within the temporal limits of [defendant's] duty to defend, i.e., between tender of the defense

---

[3]While Judge Hernandez did not specifically reference the statutory presumptions found in OR. REV. STAT. 465.480(7), his conclusion is consistent with those presumptions.

> and conclusion of the action; (2) the actions taken amount to a reasonable and
> necessary effort to avoid or at least minimize liability; and (3) the actions taken are
> reasonable and necessary."

*Id*. at *8 (quoting *KLA-Tencor Corp. v. Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 15376, 13-14, 2004 WL 1737297 (N. D. Cal. Aug. 4 2004)). Two of the three elements necessary to meet an insured's burden require a showing that the actions taken are reasonable and necessary.

Judge Hernandez then addressed the insurers' objections to specific costs to determine whether they were reasonable and necessary. For example, Judge Hernandez found that counsel's involvement in the executive committee for the potentially responsible parties was reasonable and necessary while her work on the technical, insurance, and orphan committees was not. *Ash Grove*, 2013 WL 4012708, at *9. He also considered, and reduced, the fees charged by counsel based on block billing, billing in large increments, and vague entries,[4] noting that "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Id*. at *10 (quoting *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). Judge Hernandez did not simply accept the insurer's representations regarding the existence and amount of the defense costs, but rather considered the costs requested to determine whether they were necessary and reasonable.

Any argument by Marine that Insurers' denial of the tender of defense waived their right to raise objections to defense costs incurred by Marine is directly contrary to Oregon law that when an insurance company wrongfully refuses to accept a tender of defense from its insured, it is liable for the reasonable and necessary costs of the defense of the underlying claim. *Z R Z Realty Co. v. Beneficial Fire and Casualty Ins. Co.*, No. 9708-06226, 1999 WL 34001829, at *2 (Or. Cir. Oct. 15,

---

[4]The Insurers did not object to the hourly rate.

1999) (insured must prove that defense costs sought were "reasonable and necessary to avoid, or at least minimize, liability"); *see also Greenbrier Co. Inc. v. American Dynasty Surplus Lines Ins. Co.*, Civil No. 07-1445-KI, 2008 WL 3887643, at *4 (D. Or. Aug. 21, 2008)("A breach of the duty to defend makes the insurer liable for the reasonable and necessary costs of the defense."). If, in fact, an insurer waived its right to object to the defense costs an insured sought to recover, the cases would provide that an insurer is strictly liable for all defense costs claimed by the insurer. This clearly is not Oregon law.

Marine must first establish the costs it seeks to recover are properly characterized as defense costs. In doing so, it may rely on the rebuttable presumption found in OR. REV. STAT. 465.480(7)(a). Once the expenses are properly identified as defense costs, Argonaut and Marine bear the burden of proof on the existence and amount of the claimed defenses costs, including documentation of the hours expended, and Insurers must present evidence the requested costs were unreasonable or unnecessary.

While not specifically addressed in the current briefing, the parties previously briefed the issue of whether Marine is entitled to recover defense costs incurred prior to the tender of the action to the Insurers. As the court finds it expedient to resolve all issues at the earliest possible date, it will address this issue now.

### B. Pre-Tender Defense Costs

#### 1. Majority View

Marine seeks to recover costs it incurred in defending the remediation of the Portland Harbor Superfund Site ("Remediation") prior to tendering the defense of the Remediation to the Insurers. The Insurers argued they are not liable for costs incurred by Marine prior to such tender. Treatises

consistently teach that pre-tender defense costs are not recoverable. In doing so, the treatises distinguish between the forfeiture of coverage resulting from untimely notice, which requires a showing of prejudice to the insurer, and the obligation to pay defense costs, which does not arise until the insured tenders the defense.

In one treatise, Allan D. Windt explains that:

> an insurer will rarely be able to forfeit an insured's coverage because of the insured's failure to provide timely notice of a claim. Under those circumstances, however, the insurer will likely not be obligated to pay for the defense costs incurred by the insured prior to the time that the insurer was given notice. The distinction between forfeiting coverage that otherwise exists based upon late notice, and simply not being liable for pre-tender defense costs (which does not involve a forfeiture – there is simply no coverage to begin with), is discussed, for example, in *Xebec Development Partners, Ltd v National Union Fire Insurance Co.*,

>> The policy required, as a condition precedent to a duty to pay defense costs, that National Union be given notice of the claim . . . . XP argues that lack of notice was rendered inconsequential by the jury's additional finding that the omission had not prejudiced Nation Union. But the existence or absence of prejudice to Nation Union is simply irrelevant to National Union's duty to indemnify costs incurred before notice . . . The prejudice requirement . . . applies only to the insurer's attempt to assert lack of notice as a policy defense against payment even of losses and costs incurred after belated notice.

>> There are three, alternative reasons why an insurer might not be held liable for pre-tender defense costs. First, one of the conditions in most policies states that the insured cannot, except at its own cost, voluntarily make any payment or incur any expense. Several courts have held that an insurer is not liable for pre-tender defense costs when a policy contains such a provision or one similar thereto.

>> Moreover, even in the absence of such policy provisions, most of the courts that have addressed the issue have held that an insurer is not liable for pre-tender defense costs because (1) the policy coverage is not triggered until such notice is given, and (2) until the policy coverage is triggered, defense costs are not covered. In addition, it is not enough that the insurer inadvertently learns that a defendant that happens to be an insured has been sued; the insured must at least implicitly make a coverage claim, by advising the insurer that it has been sued, before the insurer can be held liable for defense costs.

Finally, the third reason, given by one court, for holding that the insurer was not liable for pre-tender defense costs is waiver. In *Great American Insurance Co v Aetna Casualty & Surety Co*, the court held that, "considering the totality of circumstances," the insured waived its right to coverage for pre-tender defense costs because it "presumably knew" of the existence of insurance, but "voluntarily chose to retain its own counsel until it tendered its defense" to the insurer.

If, however, the insurer denies coverage, it has been held that the insurer (assuming its coverage denial proves to have been erroneous) must pay the pre-tender defense costs. It has been reasoned that, under those circumstances, it would have made no difference, as a practical matter, whether the insurer had been provided timely notice. The foregoing analysis is flawed. As discussed at the beginning of this section, the issue is not prejudice, or what the insurer would have done (or done differently than the insured) had timely notice been given; the issue is what coverage is afforded under the policy and when is the coverage triggered.

1 INSURANCE CLAIMS AND DISPUTES § 4:44 (6th ed.).

A trio of lawyers specializing in insurance coverage discuss an insurer's obligation to reimburse an insured for defense costs incurred prior to tendering defense to the insurers in another treatise.

An insured's failure to provide the insurer with timely notification of a claim may operate to relieve the insurer of its duty to defend the insured. However, this generally will only apply where the insurer can show actual prejudice as a result of the insured's delay in notification. The dispositive factor in determining whether an insurer has been prejudiced by a delay is not how much time elapses prior to the tender of defense, but rather it is what happens during that period of time. Accordingly, prejudice is established by examining whether the insurer received notice in time to meaningfully protect its interests. An insurer is prejudiced as a matter of law where the defense of a lawsuit is not tendered to the insurer until after entry of judgment against the insured.

Even if a delay does not operate to relieve an insurer of its obligation to defend altogether, an insurer is not liable for the pre-tender costs of defense incurred by the insured irrespective of the existence of prejudice. Unless the insurance contract provides otherwise, an insurer is only responsible for defense costs incurred after the tender of the suit.

14 COUCH ON INSURANCE § 100:34 (3rd ed.).

Finally, in a treatise addressing issues in construction law, the authors state that:

> If an insured is too late in providing notice to an insurer, it may encounter a "late notice" defense resulting in a forfeiture of coverage. This can be a harsh consequence and, as a result, courts generally are reluctant to so penalize an insured unless the insurer can establish material prejudice. By contract, there is no such requirement in most jurisdictions of the application of the rule that the insured is not entitled to recover defense costs expended prior to tendering the defense to the insurer. The difference between the "late notice" and the "pre-tender defense costs" rules has been described as follows:

>> The "no pre-notice defense costs" rule does not conflict with the "notice-prejudice" rule. For one thing, the two are contingent on separate acts. In deciding whether there is a duty to defend, the court must inquire into whether the insured tendered the defense to the insurer. It often happens that the insured tenders the defense when it provides notice of the claim. However, courts recognize that the two are not identical. On the other hand, deciding whether late notice has absolved an insurer of its duty to reimburse for defense costs, the court must evaluate if – considering when the insured gave notice of the occurrence or claim – the insurer was prejudiced. The lines of inquiry are separate.

>> The policies that prompted courts to graft the prejudice requirement onto the notice requirement have little bearing on the notion of pre-tender costs. The prejudice requirement was adapted to prevent complete forfeiture based upon technical failure of the insured to provide timely notice. In contrast, enforcement of the rule that pre-tender defense costs are not recoverable does not result in complete forfeiture of an insured's right to recover fees. Rather, the rule gives the insured the choice of defending some or all of the claim on its own. There are tactical reasons, why an insured may want to withhold the defense from an insurer that clearly covers a risk. For example, especially in a high-profile case, an insured may not want to lose control of events to the insurer . . . . Because the polices justifying the prejudice requirement do not apply to the tender requirement, courts have concluded that (at least between sophisticated parties) the "no pre-tender defense costs" rule remains viable even in jurisdictions that have adopted the "notice-prejudice" rule.

In addition to reasoning that notice in tendering is a precondition for insurer's obligation to provide a defense, other courts had added the further justification that

pre[-]tender defense costs violated the policy's "voluntary payments" provision. A common rendition of this provision states:

> No insured will, except at that insured's own costs, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>
> Where an insured incurred two years worth of defense costs, believing prior law did not permit coverage, reimbursement was unavailable due to the voluntary payments clause. While a fine point, at least one court has ruled that while the voluntary payments clause applies to prohibit "pre-tender" legal expenses, the operative trigger is not the insurer's consent as suggested by the clause but rather the tender.

4 BRUNER & O'CONNOR CONSTRUCTION LAW § 11:47 (2013).

At least one Oregon court has addressed the issue of the recovery of pre-tender defense costs and held, unequivocally, that "[p]re-tender defense costs are not recoverable." *Z R Z Realty,* 1999 WL 34001829, at *6. The parties have not cited to, and the court has been unable to find, any other Oregon case considering the question of whether pre-tender defense costs are recoverable.[5] Based on the lone Oregon case addressing the issue, this court is convinced that Oregon courts would agree with the majority view evidenced by the treatises that pre-tender defense costs are simply not recoverable.

### 2.  Formal Notice Triggers Duty to Defend

Oregon courts recognize the duty to defend is triggered by formal notice of the underlying action to the insurer, which supplies additional support for this conclusion. In *Oregon Ins. Guar. Ass'n v. Thompson,* 93 Or. App. 5, 11 (1988), the court held that providing notice of a claim is a condition precedent to a duty to defend. The court reasoned that without a copy of the pleading

---

[5]This district has, on at least one occasion, found an insurer is not obligated to pay pre-tender costs under Oregon law. *Siltronic Corp. v. Employers Ins. Co of Wausau*, No. 3:11-CV-1493-ST, 2015 WL 181785, at *9 (D. Or. Jan. 14, 2015).

setting forth the details of the underlying claim, an insurance company is unable to determine whether it has a duty to defend or participate in the defense of the claim. *Id.* This district subsequently recognized that, under Oregon law, "[t]o invoke the insurer's duty to defend, the insured must provide a copy of the relevant pleading to the insurer." *Spring Vegetable Co. v. Hartford Cas. Ins. Co.*, 801 F. Supp. 385, 390 (D. Or. 1992); *see also Wausau Business Ins. Co. v. Puget Plastics Corp.*, No. CV 05-50-HA, 2006 WL 1865446, at *2 (D. Or. June 30, 2006)("Notice of the claim is a condition precedent to the duty to defend.").

Similarly, the Ninth Circuit, applying Texas law which recognized the duty to defend is not triggered until formal notice of the claim is given to the insurer, held the plaintiff was not entitled to recover legal fees incurred prior to the tender of the claim. *Legacy Partners, Inc. v. Travelers Indem. Co. of Illinois*, 83 Fed. Appx. 183 (9th Cir. 2003). The Ninth Circuit relied on a Fifth Circuit case, also applying Texas law, stating that "under Texas law, the duty to defend does not arise until a petition alleging a potentially covered claim is tendered to the insurer. The cases on which the district court relied to support its determination that pre-tender costs were recoverable are inapposite." *Id.* (quoting *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399-400 (5th Cir. 1995), *reversed in part on other grounds, Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1 (Tex. 2000)).[6]

These holdings are consistent with the reasoning of the treatises, and the cases on which those treatises rely, that policy coverage, including the duty to defend, is not triggered until notice is given and until coverage is triggered, defense costs are not covered. Again, the court finds that

---

[6]The *Lafarge* court also discussed the existence of a no voluntary payment clause as support for a finding that pre-tender defense costs are not recoverable. No voluntary payment clauses are discussed in detail below.

based on relevant Oregon case law, the duty to defend does not exist until tender is made. Consequently, defense costs incurred prior to this tender are not recoverable.

        3.   Notice-Prejudice Rule

Like the plaintiff in *Lafarge*, Marine attempted to invoke the notice-prejudice rule arguing that Insurers are unable to establish they suffered any prejudice as a result of the seven-month delay in tendering the defense to the Insurers. Oregon law provides an insurer may not rely on an insured's failure to give timely notice unless the insurer can show prejudice. *Lusch v. Aetna Cas. & Surety Co.*, 272 Or. 593, 597 (1975). However, the Oregon courts have, at least to this court's knowledge, applied this notice-prejudice rule only to an insurer's decision to deny coverage under the policy, not to an insurer's obligation to pay pre-tender defense costs.

In *Lusch*, the court explained the purpose of giving notice was to give the insurer time to "adequately investigate the potential claim, and thus protect itself and the insured" such as allowing the insurer to attempt a compromise of the claim before the filing of a legal action. *Id*. The court offered a hypothetical in which a third party notified the insurer of an accident the day after it occurred but the insured never notified the insurer. It explained that "[b]ecause the insurer suffered no prejudice under these circumstances, the insurer should not be permitted to deny coverage on the ground that its insured failed to give notice of the accident or that it acted unreasonably." *Id*. Subsequently, the Oregon courts described the notice-prejudice rule as requiring that an insurer "show prejudice before it can deny coverage for failure to receive timely notice of a claim by its insures. . . ." *Herman v. Valley Ins. Co.*, 145 Or. App. 124, 132 (1996).

Similarly, this court has previously recognized that when Oregon courts require an insurer to show prejudice, "it has been when the insurer seeks to invoke the insured's non-cooperation as

a defense to its denial of coverage, thereby barring the insured's recovery." *Gerke v. Travelers Cas. Ins. Co. of America*, 815 F. Supp. 2d 1190, 1201 (D. Or. 2011)(reviewing *Lusch* and three other Oregon cases applying the notice-prejudice rule). Again, the Ninth Circuit relied on similar "well-established Texas authority" establishing that "prejudice is only a factor when the insurer is seeking to avoid all coverage for failure to comply with the notice provisions of the policy" in denying the plaintiff's request for reimbursement for legal fees incurred prior to tendering the claim to the insurer. *Legacy*, 83 Fed. Appx. at 189 (quoting *Lafarge*, 61 F.3d at 399 n.19).

The Oregon court's application of the notice-prejudice rule to the issue of coverage, not pre-tender defense costs, is consistent with the reasoning enunciated in the treatises that the timely notice of a claim is irrelevant to an insurer's obligation to pay defense costs incurred before tender because there is no coverage for pre-tender defense costs to begin with. Furthermore, the Insurers did not argue they are not responsible for pre-tender costs because they were prejudiced by Marine's delay in tendering the Remediation to them. Rather, they argued only that their obligations under the policies, including the duty to defend, were not triggered until such tender. Accordingly, the question of whether the Insurers were prejudiced by Marine's seven-month delay in tendering defense of the Remediation to the Insurers is not relevant to the Insurer's duty to pay pre-tender defense costs.

4. Voluntary Payment Exclusion

Marine also argued that because it was obligated to hire legal counsel to assist in completing the preliminary tasks required to protect Marine's interests with regard to the Remediation, such payments were not voluntary and are, therefore, not barred by the voluntary payment exclusion in the Great American and St. Paul Policies. In doing so, Marine attempts to rely on an exclusionary

PAGE 15 – OPINION AND ORDER                                        *{SIB}*

clause found in the Great American and St. Paul Policies to create an obligation for reimbursement of pre-tender costs where none exists, because coverage under a policy is not triggered until tender is made.[7]  Because Oregon law establishes the duty to defend is not triggered until after notice is given, there is no support in Oregon law for the contention that the voluntary payment exclusion creates an otherwise nonexistent obligation to pay involuntarily incurred costs.  The question of whether a pre-tender defense cost was paid voluntarily is not an issue because no pre-tender defense costs are recoverable.

Marine relied on California case law to support its argument.  A careful review of the California cases, however, establish the position of the California courts on the issue of the application of voluntary payment exclusions to pre-tender defense costs is not consistent and is, for the most part, contrary to that of the Oregon courts.

The Ninth Circuit has held that California courts consistently "honor" voluntary payment exclusions and "will not require insurers to pay for voluntarily incurred pre-tender costs" implying that the clause applies to, and governs, the payment of pre-tender defense costs. *N. Ins. Co. of New York v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1360 (9th Cir. 1992); *Faust v. The Travelers*, 55 F.3d 471, 473 (9th Cir. 1995) ("California courts have consistently honored voluntary payment provisions. . . .  The policy provision at issue in the instant case precludes recovery of pre-tender costs 'voluntarily' incurred by the insured.").  However, a review of the California cases does not,

_____

[7]The Great American exclusionary clause provides that "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident."  (Rycewicz Decl., April 20, 2011, ECF No. 307 ("Rycewicz Decl.") Ex. 3 at 10, 53.)  The St. Paul exclusionary clause similarly provides that "[t]he Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense, other than for such immediate medical and surgical relief to others as shall be imperative at the time of occurrence or accident.  (Rycewicz Decl. Ex. 15 at 24.)

necessarily, support this holding.

In what appears to be the case primarily relied on by Marine, a California court specifically rejected the majority rule enunciated in the treatises, and arguably followed by the Oregon courts, that pre-tender defense costs are not recoverable under any circumstances, instead finding that "recovery of pre-tender defense expenses is dependent upon the normal rules of interpretation of an insurance contract and the particular circumstances of the case." *Fiorito v. Superior Court*, 226 Cal. App. 3d 433, 439 (1990). Despite rejecting the insurer's argument that "recovery of pre-tender defense expenses are precluded as a matter of law", the court did not consider the voluntary payment exclusion in the policy as applied to pre-tender defense costs or determine whether the plaintiffs may eventually be entitled to recover pre-tender defense costs. *Id*. at 440 n.4.

A California court later acknowledged that *Fiorito* avoided the question of whether the voluntary payment exclusion applied to pre-tender defense costs, stating that the *Fiorito* court noted "the provision does not specifically refer to the costs of defense and there is a question what a reasonable insured would have understood reading the provision." *Shell Oil Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 44 Cal. App. 4th 1633, 1648 (1996)(quoting *Fiorito*, 226 Cal. App. 3d at 440). However, the *Shell* court also avoided the question of whether the voluntary payment exclusion applied to pre-tender defense costs finding only that "[u]nder these circumstances, it appears appropriate to treat the court's decision awarding Shell its expenses as an adjudication that the voluntary payments provision did not apply, either on its face or on the facts relating to voluntariness." *Shell*, 44 Cal. App. 4th at 1649. In doing so, the court impliedly held that pre-tender defense costs are recoverable if they are paid involuntarily, regardless of the existence of a voluntary payment exclusion in the insurance policy.

At least two courts applying California law have relied on *Shell* for the proposition that pre-tender defense costs are recoverable where a plaintiff is unaware of the existence or contents of an insurance policy and is, therefore, unable to tender.  In a case addressing a voluntary payment exclusion, a California court cited *Shell* for the proposition that when an insured is "unaware of identity of the insurer or the contents of the policy," payments made before tender were involuntary. *Jamestown Builders, Inc. v. General Star Indem. Co.*, 77 Cal. App. 4th 341, 348 (1999).  The Ninth Circuit, after noting "[a]n insurer generally has no duty to defend an insured until the insured tenders his defense" recognized that *Shell* created an exception "where the insured was unaware of the existence or contents of the policy and was therefore unable to tender."  *American Nat'l Red Cross v. St. Paul Travelers, Inc.*, 293 Fed. Appx. 512, 513 (9th Cir. 2008).  No mention was made of a voluntary payment exclusion in the *Red Cross* case, which implies the court based its decision on a variation of the notice-prejudice rule and a finding that a delay in notice may be reasonable where a plaintiff lacks knowledge of potential coverage under the policy.  However, a third California court specifically held *Shell* "is not a prejudice case at all; rather, it is an affirmation that certain claimed 'voluntary' payments may in fact be involuntary."  *Insua v. Scottsdale Ins. Co.*, 104 Cal. App. 4th 737, 747 (2003).   The *Insua* court also noted the "prejudice requirement applies only where [an] insurer uses belated notice to defend against payment of losses and costs incurred *after* notice."  *Id*. at 746 (citing *Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97 Cal. App. 4th 704, 711 (2002)).

In *Tradewinds*, a case relied on by the *Insua* court, the court explains that voluntary payment exclusions:

> bar reimbursement for pre-tender expenses based on the reasoning that until the defense is tendered to the insured, there is no duty to defend.  They are also based on the equitable rule that "the insurer [is invested] with the complete control and

direction of the defense" and cannot be expected to pay for that which is does not control. Only when the insured has requested and been denied a defense may it ignore the "no voluntary payment" provision of the policy. Thus, where the insured has failed to demand a defense and relinquish control over the case, it cannot expect the quid pro quo of pre-tender voluntary payments, expenses, or other obligations incurred by the insured pre-tender without the insurer's consent.

However, even if the policy contains a no voluntary payments provision, pre-tender expenses are not barred if they were incurred involuntarily. . . . [P]ayments may be involuntary where the circumstances of the case show they payments were out of the insured's control. "This situation might occur where the insured is unaware of the identity of the insurer or the contents of the policy."

*Tradewinds*, 97 Cal. App. 4th at 710 (citations omitted). *Tradewinds* teaches that pre-tender defense costs paid involuntarily, which occurs when an insured is not immediately aware of the existence or content of an insurance policy, are recoverable regardless of the existence of a voluntary payment exclusion and that such exclusions do not apply to pre-tender defense costs.

The California cases appear to stand for the proposition that under California law an insured who is not aware of the existence, or contents, of an insurance policy may be entitled to recover for pre-tender defense costs incurred involuntarily. The justification for this entitlement is anything but clear. Some courts have held, or inferred, that such pre-tender defense costs are recoverable based on voluntary payment exclusions. Others have found evidence the insured was not aware of the insurance coverage supports a finding the pre-tender defense costs were incurred involuntarily, thereby making them recoverable. Finally, at least one case has suggested that pre-tender defense costs are recoverable based on a variation of the notice-prejudice rule. To compound the confusion, *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 60-61 (1997), stands in stark contrast to the cases discussed above. In *Aerojet*, the California Supreme court held an insurance company is obligated to pay the insured's site investigation costs only if three conditions are met, one of them

being the requirement that "the site investigation . . . be conducted within the temporal limits of the insurer's duty to defend, i.e., between tender of the defense and conclusion of the action."   The absence of a clear philosophy on the issue of pre-tender defense costs under California law, and the clear divergence between the Oregon and California courts in the cases addressing the primary issues involved, convinces the court that can not be applied here.

In light of existing Oregon case law, as well as opinions by this district and the Ninth Circuit applying similar law, the court is convinced that, given the opportunity, Oregon courts would agree with the teachings of the treatises and prohibit the recovery defense costs incurred prior to formal tender of the underlying action to the insurer.   Accordingly, the court finds Marine does not have a claim against any of the Insurers for defense costs incurred prior to tender of defense of the Remediation.

II.  Argonaut Seeking Reimbursement from Insurers for Independent Counsel [8]

Oregon statutes provide an insurer who has undertaken the defense of an environmental claim under reservation of rights or has potential liability in excess of policy limits, "shall provide independent counsel to defend the insured who shall represent only the insured and not the insurer." OR. REV. STAT. 465.483(1) (2013).   The statute provides the qualifications required for the independent counsel and authorizes the retention of environmental consultants to assist the independent counsel.  OR. REV. STAT.483(2) (2013).  The amount the insurer is obligated to pay to

---

[8]Argonaut argues its "right to contribution under ORS 465.480(4) is not affected by the nature of its relationship with defense counsel, *viz.*, whether defense counsel is 'independent counsel' or not."  While Argonaut is entitled to contribution regardless of the characterization of defense counsel, ORS 465.483 provides limits on the fees paid to independent counsel which do not appear in ORS 465.480, leading the court to conclude a distinction exists that should be acknowledged.

independent counsel and environmental consultants "is based on the regular and customary rates for the type and complexity of environmental claim at issue in the community where the underlying claim arose or is being defended." OR. REV. STAT. 465.483(3) (2013). Accordingly, the reasonableness of the hourly rate charged is an issue to be resolved within the parameters of the statute.

This district has applied the statutory presumptions found in OR. REV. STAT. 465.480(7)(a) to claims for defense costs when an insurer has provided a defense for environmental claims under a reservation of rights. In *Siltronic*, Judge Stewart addressed an insurers' objection to the identification of payments by the paying insurer as defense or indemnity costs resulting in a premature exhaustion of coverage limits. *Siltronic*, 2014 WL 901161, *3. The court considered disputed payments under six categories: 1) Backfill Evaluation; 2) Stormwater Evaluation; 3) DEQ Oversight; 4) Natural Resource Assessment; 5) Remedial Investigation; and 6) Unilateral Overpayment, analyzing evidence offered by both parties to determine the appropriate classification. *Id*. at *3-*9.

Judge Brown later relied on *Siltronic* in finding an insurer's reliance on an expert's characterization of payments was insufficient to establish the proper classification of the payments in the context of exhaustion of policy limits. *Nw Pipe Co. v. RLI Insurance Co.*, No. 3:09-CV-01126-BR, 2014 WL 1406595 (D. Or. April 10, 2014). Judge Brown found the issues in *Siltronic* to be similar to those before her and described the analysis undertaken by Judge Stewart.

> In *Siltronic II* the court was presented with a similar issue and asked to determine whether certain costs related to the insured's environmental claim were properly categorized as defense or indemnity costs. In making such determinations, the court relied on detailed evidence and testimony provided by the parties as to the specific work for which the disputed invoices issued and the way that work related to the

types of costs outlined in Oregon Revised Statute § 465.480(7)(a) and (b).

*Id*. at *8.  She then found the evidence offered by the insurer was insufficient.

> Here, Wausau has not provided any such evidence; i.e., Wausau has not explained the specific work that was performed by CH2M Hill, Bravo, and DEQ or the bases for Wausau's conclusions that certain tasks were to be treated as defense costs or indemnity payments for the purpose of analyzing the exhaustion issue.  In short, Moore's conclusory statements that these costs were properly allocated in accordance with Oregon law is wholly insufficient to support summary judgment in Wausau's favor on the exhaustion issue.

*Id*.  Judge Brown concluded the question of whether certain environmental response costs are properly characterized as defense or indemnity expenses is inherently a fact-based determination. *Id*. at *9.

The statutes make clear an insurer paying for independent counsel for its insured may recover defense costs which are proximately related to the risk covered by the insurance policies at issue, in amounts based on the regular and customary rates for the type and complexity of environmental claim at issue in the community where the underlying claim arose or is being defended.  The rebuttable presumptions apply requiring the parties to present more than conclusory statements in support of their respective positions when a party puts the proper classification of an expense at issue.

Argonaut is entitled to rely on the statutory presumption that certain costs are defense costs, which presumption the Insurers must rebut with evidence.  However, both parties must present more than "conclusory statements" if the proper classification of an expense is at issue.  Once the expenses are properly identified as defense costs, Argonaut and Marine bear the burden of proof on the existence and amount of the claimed defenses costs, including documentation of the hours expended, and Insurers must prove the requested costs were unreasonable or unnecessary.  Argonaut is

statutorily entitled to a presumption that amounts paid to independent counsel and environmental consultants as defense costs at the regular and customary rates charged for environmental claims similar to the one at hand are reasonable.

III.  Argonaut Seeking Reimbursement from Insurers for its Own Expenses

Generally, the right to contribution from a co-insurer is based on the "equitable doctrine which holds that one who pays money for the benefit of another is entitled to be reimbursed." *Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co.*, 242 Or. 407, 417 (1965).  This equitable contribution is a right grounded in "principles of equity" and inures to the benefit of the insurer, rather than a right grounded in subrogation or contract theory in which the insurer stands in the shoes of its insured.  *Certain Underwriters at Lloyd's London & Excess Inc. Co. v. Massachusetts Bonding & Ins. Co.*, 235 Or. App. 99, 113 (2010).  However, in the context of environmental claims, the statutory provisions found in OR. REV. STAT. 465.480 preempt "all common law contribution rights, if any, by and between insurers for environmental claims."  OR. REV. STAT. 465.480(4)(d).

Argonaut apparently construes this statutory language as a preemption of all common law relevant to a contribution claim, including the determination of the amount at issue.  The court finds the proper construction of the language preempts all common law governing the proper allocation of responsibility between the co-insurers but has no effect on the determination of the amount at issue.  The section immediately following the preemption language provides:

> If a court determines that the apportionment of recoverable costs between insurers is appropriate, the court shall allocate the covered damages between the insurers before the court, based on the following factors:
>
> (a) The total period of time that each solvent insurer issued a general liability insurance policy to the insured applicable to the environmental claim;

(b) The policy limits, including any exclusions to coverage, of each of the general liability insurance policies that provide coverage or payment for the environmental claim for which the insured is liable or potentially liable;

(c) The policy that provides the most appropriate type of coverage for the type of environmental claim;

(d) The terms of the policies that related to the equitable allocation between insurers; and

(e) If the insured is an uninsured for any part of the time period included in the environmental claim, the insured shall be considered an insurer for purposes of allocation.

OR. REV. STAT. 465.480(5) (2013).  This provision addresses only the factors to be considered in allocating responsibility for covered damages but does not mandate the standards to be applied in determining the amount at issue.

The use of the phrase "recoverable costs" in OR. REV. STAT. 465.480(5) implies not all costs are recoverable.  This implication is supported the use of similar language elsewhere in the statute. For example, an insurer may not refuse insurance coverage for "any reasonable and necessary fees, costs, and expenses" incurred by the insured pursuant to a voluntary agreement entered into with the Department of Environmental Quality or the United States Environmental Protection Agency.  OR. REV. STAT. 465.480(2)(c).  Furthermore, OR. REV. STAT. 465.480(3)(a), which discusses an insurer's duty to pay defense costs on environmental claims, limits such obligation to payment of defense costs "proximately arising out of the risk covered by the policy" implying a requirement of a causal relationship between the claim defense costs and the insured risk or, in other words, a requirement of necessity.[9]  Finally, OR. REV. STAT. 465.480(7)(a), the statutory presumption

---

[9]Argonaut apparently concedes this point in its reply brief, arguing that one factor the court should consider is whether the expenses sought were related to the defense of Marine.

applicable to defense costs, refers to "preliminary assessments, remedial investigations, risk assessments or other necessary investigation" as "defense costs payable by the insurer," thereby limiting defense costs recoverable under the presumption to only those necessary to the investigation.

The express provision of factors to be used by a court when allocating responsibility between co-insurers in the context of a contribution and the absence of any standards to be applied in determining the amount to be divided between the responsible parties, along with references elsewhere in OR. REV. STAT. 465.480 to "reasonable and necessary fees", "recoverable costs", and costs of "necessary investigation" leads to a conclusion that the preemption language found in OR. REV. STAT. 465.480(4)(d) applies only to the allocation of responsibility between co-insurers, and not to common law methods used by courts to determine the amount of costs to be allocated. Accordingly, the court finds that Oregon common law governs the determination of what defense costs are subject to Argonaut's claim for contribution under OR. REV. STAT. 465.480(4).

There is virtually no case law addressing standards applicable to determining recoverable defense costs when a paying insurer seeks contribution from nonpaying insurers on an environmental claim under OR. REV. STAT. 465.480. Judge Jelderks addressed a claim for equitable contribution by two insurers against a third insurer in *Evraz Oregon Steel Mill, Inc. v. Continental Ins. Co.*, No. CV 08-447-JE, 209 WL 789658 (D. Or. March 20, 2009). Three insurance companies accepted tender of defense in an environmental action and paid defense expenses in agreed upon percentages until one of the insurance companies stopped contributing and claimed exhaustion of liability after tendering the policy limits to the insured. *Id*. at *2-3. The nonpaying insurer sought summary judgment on the remaining paying insurers' claims for equitable contribution. The court denied the motion, referencing the contribution rights set forth in OR. REV. STAT. 465.480(4) and the rebuttable

presumptions created in OR. REV. STAT. 465.480(7), and finding that tender of the policy limits did not establish the nonpaying insurer had fully discharged its defense and indemnification obligations. *Id*. at *12, 16-18.

In *Nw Pipe,* Judge Brown determined the proper date for calculating prejudgment interest on defenses costs awarded to paying insurers from a noncontributing insurer on an environmental claim. The court did not address the amount of defense costs on which to base prejudgment interest because the noncontributing insurer stipulated to the amount of "reasonable and necessary defense costs." 2014 WL 2040073 at *4.

However, this court recently had the opportunity to address the standards to be applied in determining what fees and costs are recoverable under Oregon law in general.  In *Powell v. System Transport, Inc.*, No. 3:13-CV-1216-AC, 2015 WL 364338, *2 (D. Or. Jan 26, 2015), a jury returned a verdict in favor of an insured for lost wages resulting from injuries suffered in a car accident.  The insurer sought partial satisfaction of the judgment for wage-loss benefits previously paid to the insured.  *Id*. at *3.  The court granted the motion for partial satisfaction under a statute which required the benefits paid be decreased by the attorney fees and costs incurred by the insured in recovering the benefits.  *Id*. at *11.  The insured argued that, under the relevant statute, the recoverable attorney fees and costs were determined by a mathematical computation without regard to reasonableness.  *Id*.  The court  rejected this argument, explaining:

> Oregon law is clear; attorneys fees and costs must be evaluated for reasonableness.
> The Oregon Supreme Court has expressly stated that "[u]nder any conceivable
> circumstances an insurer who makes a recovery from a third party for moneys paid
> its insured is only required to pay attorney fees which were 'reasonably and
> necessarily incurred' to make the recovery."

*Id*. at *12 (quoting *Ridenour v. Nationwide Mut. Ins. Co.*, 273 Or. 514, 516 (1975); citing *Strawn*

*v. Farmers Ins. Co. of Or.*, 353 Or. 210, 201 (2013)("For an attorney fees award either pursuant to a fee-shifting statute or the common fund doctrine, the touchstone for the amount of the award is the same – reasonableness")(citing OR. REV. STAT.742.061(1) (court to fix fee in "reasonable amount" in action on insurance policy)).  The court found the insured, "as the party seeking fees, bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."  Id. at *12 (quoting *MW Builders, Inc. v. Safeco Ins. Co. of Am.*, Civil No. 02-1578-AC,  2009 WL 1161751, *3 (D. Or. April 28, 2009)).  Therefore, the court finds that, under Oregon law, Argonaut may recover only reasonable and necessary defense costs from Insurers.

Argonaut argues that by denying the tender of defense, Insurers waived the right to object to the amount of defense costs requested.  In support of this argument, Argonaut relies primarily, if not solely, on cases from other states.[10]  A number of these cases are distinguishable based on the parties involved and the law applied.  In *Louisiana Generating LLC v. Illinois Union Ins. Co.*, Civil Action No. 10-516-JJB, 2014 WL 1270049 (M. D. La. March 27, 2014), *Narragansett Elec. Co. v. American Home Assur. Co.*, 999 F. Supp. 2d 511 (S.D.N.Y. 2014), *Crossman Communities of North Carolina, Inc. v. Harleysville Mut. Ins. Co.*, 2013 WL 5437712 (D. S.C. 2013), *Shore Chan Bragalone Deumpt LLP v. Greenwich Ins. Co.*, 904 F. Supp. 2d 592 (N. D. Tex. 2012), *Emhart Indus. Inc. v. Home Ins. Co.*, 515 F. Supp. 2d 228 (D.R.I. 2007), *Taco Bell Corp., v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), *Gopher Oil Co. v. American Hardware Mut. Ins. Co.*, 588 N.W.2d 756, 770 (Minn. Ct. App. 1999), *Aerojet-Gen. Corp. v. Transport Indem. Co.*, 17 Cal. 4th

---

[10]The court addresses cases cited by both Argonaut and Marine in support of the proposition an insurer waives the right to object to defense cost by denying tender of defense.

38 (1998), and *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 790 F. Supp. 1339 (E. D. Mich. 1992), the courts addressed claims for defense costs sought by an insured from insurers applying New York, Massachusetts, South Carolina, Texas, Rhode Island, Illinois, Minnesota, California, and Michigan law, respectively.  In *Safeco Ins. Co. of America v. Superior Court*, 140 Cal. App. 4th 874 (2006), the court addressed an equitable contribution claim filed against a nonparticipating insurer by insurers that  provided a defense to the insured under a reservation of rights under California law. These cases, which consider contribution claims between an insured and its insurer, or against co-insurers with one insurer defending under a reservation of rights and which apply state law other than Oregon, are not relevant to the issue before the court: whether, under Oregon law, an insurer who does not provide a defense for its insured waives the right to object to the reasonableness or necessity of defense costs sought by a defending co-insurer.

     *St. Paul Mercury Ins. Co. v. v. Mountain West Farm Bureau Mut. Ins. Co.*, 210 Cal. App. 4th 645 (2012), did  involve a claim for contribution filed by a settling insurer against a noncontributing insurer for defense costs.  The court noted its prior holding in *Safeco* that "a coinsurer who declined to provide a defense . . . was precluded from challenging the reasonableness of the defense costs or the amount in settlement."  *Id.* at 662.   However, this reference was merely dicta as the parties stipulated to the amount paid by the settling insurer as defense costs.  *Id.*  Additionally, the court did address and consider evidence on the noncontributing insurers' argument that the settling insurer had failed to demonstrate how much of the defense costs were incurred to defend claims for which the noncontributing insurer's insured was liable.  This analysis implies that California courts will allow a noncontributing insurer to object, at the least, to the relationship between the defense costs sought and the risk covered by the noncontributing insurer.

A Wisconsin appellate court addressed a contribution claim for defense costs paid by an excess insurer providing a defense against the primary insurer who, despite specific rulings by the trial court, refused to perform its duty to defend. *Se. Wis. Prof'l Basebal Park Dist. v. Mitsubishi Heavy Indus. Am. Inc.*, 304 Wisc. 2d 637, 645 (2007). The appellate court did not allow the primary insurer to question the litigation strategy of the excess insurers and insured but did allow objections based on other grounds. The court cited New Jersey case law for the proposition that by refusing to participate in the defense, an insurer forfeits the right control the defense. *Id.* at 685 (citing *Hebela v. Healthcare Inc. Co.*, 370 N. J. Super. 260, 267 (2004)). The appellate court specifically acknowledged the trial court did allow the primary insurer to "challenge billing items that did not involve strategic decisions." *Id.* at 686. Accordingly, the court did not foreclose objections based on reasonableness or necessity unrelated to litigation strategy.

In sum, based on the cases relied on by Argonaut and Marine, no case applying Oregon law has held that an insurer waives the right to object to the reasonableness or necessity of defense costs incurred by a co-insurer in a claim for contribution under OR. REV. STAT. 465.480. Further, only two of the out-of-state cases cited by Argonaut addressed a similar claim for contribution between co-insurers. The California case summarized California law on a co-insurer's waiver of the right to object to the reasonableness of defense costs incurred by another insured under a reservation of rights, but did not rely on this law because the parties had stipulated to the amount of defense costs and the court, in fact, accepted evidence on whether certain of these defense costs were related to the co-insurer's covered risk. The Wisconsin case did not allow a non-defending insurer to question strategic or logistic decisions but did allow objections on other grounds.

In the absence of Oregon case law eliminating an insurer's obligation to establish the

reasonableness or necessity of claimed defense costs when the co-insurer from whom contribution is sought has refused to participate in the defense, the courts finds no reason to impose such a restriction on  Insurers in this action.  Further, it is not reasonable to find that an insurer waives the right to object to defense costs by refusing tender when such costs are sought by a defending co-insurer but not when such costs are sought by a defending insured, resulting in a defending co-insurer bearing less of a burden than its insured.

Argonaut is subject to the same standard, and bears the same burdens, as Marine.  Argonaut must first establish the costs it seeks to recover are properly characterized as defense costs.  In doing so, it may rely on the rebuttable presumption found in OR. REV. STAT. 465.480(7)(a).   Once the expenses are properly identified as defense costs, Argonaut bears the burden of proof on the existence and amount of the claimed defenses costs, including documentation of the hours expended, and Insurers must present evidence the requested costs were unreasonable or unnecessary.

*Conclusion*

Argonaut and Marine must first establish the expenses it seeks to recover are properly characterized as defense costs.  In doing so, they may rely on the rebuttable presumption found in OR. REV. STAT. 465.480(7)(a).  Once the expenses are properly identified as defense costs, Argonaut and Marine bear the burden of proof on the existence and amount of the claimed defenses costs, including documentation of the hours expended, and Insurers must present evidence the requested costs were unreasonable or unnecessary.  With regard to independent counsel financed by Argonaut for Marine, Argonaut is entitled to rely on the statutory presumption found in OR. REV. STAT. 465.483(3)(a) that amounts paid to independent counsel and environmental consultants as defense

costs at the regular and customary rates charged for environmental claims similar to the one at hand

are reasonable.  Marine is not entitled to recover pre-tender defense costs.

DATED this 25th day of February, 2015.


                                                _____/s/ John V. Acosta_____
                                                      JOHN V. ACOSTA
                                                United States Magistrate Judge