**C. Kent Roberts, OSB #801010**
Email ckroberts@schwabe.com
**Brien J. Flanagan, OSB #023044**
Email bflanagan@schwabe.com
**Anna M. Helton, OSB #054424**
Email ahelton@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: (503) 222-9981
Fax: (503) 796-2900

**John M. Woods, *Pro Hac Vice***
Email john.woods@clydeco.us
**George Cornell, *Pro Hac Vice***
Email george.cornell@clydeco.us
Clyde & Co US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone (212) 710-3915
Fax: (212) 710-3950

Of Attorneys for Third-Party Defendant, Water Quality
Insurance Syndicate

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY,** a Pennsylvania corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**THE MARINE GROUP, LLC,** a California limited liability company, as affiliated with **NORTHWEST MARINE, INC.,** an inactive Oregon corporation, as affiliated with **NORTHWEST MARINE IRON WORKS,** an inactive Oregon corporation,<br><br>Defendants. | Case No. 3:08-cv-01375-AC<br><br>**THIRD-PARTY DEFENDANT WATER QUALITY INSURANCE SYNDICATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AGRICULTURAL INSURANCE COMPANY, AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, AND ARGONAUT INSURANCE COMPANY**<br><br>(Oral Argument Requested) |

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

**THE MARINE GROUP, LLC,** a
California limited liability company, et al.,

                Third-Party Plaintiffs,

    vs.

**AGRICULTURAL INSURANCE
COMPANY, and AGRICULTURAL
EXCESS AND SURPLUS INSURANCE
COMPANY,** each an Ohio corporation; et
al.,

                Third-Party Defendants.

THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
PDX\101983\171030\ASM\15776181.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

## TABLE OF CONTENTS

**Page**

LR 7-1(a) CERTIFICATION ................................................................. 1

MOTION.............................................................................................. 1

MEMORANDUM OF LAW ................................................................ 2

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................ 2

II.     STATEMENT OF UNDISPUTED FACTS .................................... 3

        A.      The WQIS Policies Insuring Northwest ........................... 3

        B.      Procedural History ............................................................ 5

III.    STANDARD OF REVIEW AND BURDENS................................ 7

IV.     THE WQIS POLICIES DO NOT INCLUDE A DUTY TO DEFEND ............................ 8

V.      NORTHWEST FAILED TO MEET REQUIREMENTS UNDER THE WQIS
        POLICIES THAT WERE NECESSARY TO TRIGGER INDEMNIFICATION. .......... 11

        A.      The WQIS Policies Required Northwest to Declare Vessels it Sought to
                Insure..................................................................... 12

        B.      There is No Evidence That Northwest Ever Declared Vessels to WQIS ............ 13

        C.      Vessel Declarations Dictate the Premium to Be Paid Under the WQIS
                Policies and the Limits of Coverage Afforded By the WQIS Policies................ 15

        D.      There is No Evidence That Northwest Ever Paid Premium to Insure
                Vessels Under the WQIS Policies at Issue .......................................... 17

        E.      There is No Evidence That a Discharge or Release of Oil or Other
                Hazardous Substance From a Vessel Insured By WQIS Ever Occurred.............. 19

        F.      The WQIS Policies Do Not Provide Coverage For the Allegations Against
                the Third-Party Plaintiffs in the Underlying Actions........................................... 20

CONCLUSION ............................................................................... 23

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................................7

*Century Indem. Co. v. Marine Group, LLC,*
    848 F. Supp. 2d 1238 (D. Or. 2012) ......................................................................23

*Delta Seaboard Well Service v. Steadfast Ins. Co.,*
    45 Fed. App'x. 326 (5th Cir. 2002) .......................................................................20

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) .................................................................................7

*Fireman's Fund Ins. Co. v. Oregon Auto. Ins.,*
    CV 03-0025-MO, 2010 WL 1542552 (D. Or. 2010) *vacated and remanded on
    other grounds sub nom., Fireman's Fund Ins. Co v. North Pacific Ins. Co.,*
    446 Fed Appx. 909 (9th Cir. 2011)...........................................................................7

*Hoffman v. Foremost Signature Ins. Co.,*
    989 F. Supp. 2d 1070 (D. Or. 2013) ........................................................................8

*Marleau v. Truck Ins. Exch.,*
    333 Or. 82, 37 P.3d 148 (2001) .............................................................................21

*Martin v. State Farm Fire and Cas. Co.,*
    146 Or.App. 270, 932 P.2d 1207 (1997)................................................................21

*Motors Ins. Co. v. Bud's Boat Rental, Inc.,*
    917 F.2d 199 (5th Cir. 1990) .................................................................................20

*Nw. Pump & Equip. Co. v. Am. States Ins. Co.,*
    144 Or.App. 222, 925 P.2d 1241 (1996).................................................................8

*Oregon Farm Bureau Ins. Co. v. Safeco Ins. Co. of America,*
    249 Or. 449, 438 P.2d 1018 (1968) (en banc) ........................................................8

*ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.,*
    255 Or.App. 524, 300 P.3d 1224 (2013).................................................................10

**Statutes**

33 U.S.C. § 1321 (1981) ..................................................................................................9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

33 U.S.C. § 1321(p)(1) (1981)........................................................................................12

Comprehensive Environmental Response, Compensation, and Liability Act of
    1980, Pub. L. No. 96-510 § 107(a)(1), 94 Stat. 2767 (1980)....................................11

**Other Authorities**

46 C.F.R. § 542.11(e) (1981)........................................................................................12

FED.R.CIV.P. 56 .......................................................................................................1, 2

FED.R.CIV.P. 56(a).......................................................................................................7

14 Steven Plitt, et al., Couch on Ins. 3d § 200:5 3d (Westlaw 2014)………………………..8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

## LR 7-1(A) CERTIFICATION

The undersigned counsel for Third-Party Defendant the Water Quality Insurance Syndicate ("WQIS") has conferred with counsel for Third-Party Defendants Agricultural Insurance Company, Agricultural Excess and Surplus Insurance Company (collectively "Great American"), Intervenor Argonaut Insurance Company ("Argonaut"), Plaintiff, and Third-Party Plaintiffs in a good faith effort to resolve the issues that are the subject of this motion.  The parties were not able to resolve the issues set forth in this motion.

## MOTION

Pursuant to FED. R. CIV. P. 56, Third-Party Defendant WQIS respectfully moves the Court for an order granting partial summary judgment in its favor and against Great American and Argonaut, and hereby requests oral argument.

For the reasons set forth in the Memorandum of Law below, WQIS does not have a duty to defend the Third-Party Plaintiffs or otherwise contribute to the defense costs of the Third-Party Plaintiffs.  Therefore, WQIS respectfully requests that the Court enter an order that (1) the WQIS Policies provide no duty to defend, (2) that WQIS has no current duty to contribute to defense costs of the Third-Party Plaintiffs, (3) that WQIS is not required to participate in the upcoming preliminary trials on duty to defend issues and the reasonableness and necessity of defense costs, and (4) that this action is stayed with respect to WQIS until the indemnity phase of this litigation commences.

This Motion is supported by the concurrently filed Declarations of Harry J. Diamond, John M. Woods and Brien J. Flanagan.

/ / /

/ / /

Page 1 -     THIRD-PARTY DEFENDANT WATER QUALITY
             INSURANCE SYNDICATE'S MOTION FOR PARTIAL
             SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\101983\171030\ASM\15776181.1

## <u>MEMORANDUM OF LAW</u>

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

This Court has set a preliminary trial to address all contractual and contribution issues relating to the duty-to-defend owed by numerous insurers to the Third-Party Plaintiffs with respect to the Third-Party Plaintiffs' past and continuing involvement in efforts to allocate alleged environmental liability concerning the Portland Harbor Superfund Site (the "Underlying Actions"). *See* Case Management Order dated October 28, 2014, at 2 (Dkt. No. 607). WQIS has been included as an "Identified Party"[1] required to participate in this preliminary trial. *Id.*

Only two parties to this action contend that WQIS should be included in the preliminary trial on duty-to-defend issues. Both parties, Argonaut and Great American, are Comprehensive General Liability insurers of the Third-Party Plaintiffs who contend that WQIS should be required to contribute to defense costs arising from the Underlying Actions. However, the Third-Party Plaintiffs themselves - including the named insured under the WQIS policies at issue - Northwest Marine Iron Works ("Northwest"), make no claim that WQIS owes them a current duty to defend or a duty to otherwise contribute to defense costs.

The reasons for Northwest's position are clear. The WQIS Policies (as defined below) do not provide a duty to defend. Instead, they provide for reimbursement of defense costs incurred, with the consent of WQIS, in defending against certain statutory liabilities arising from discharges, releases or threats of releases of pollutants from scheduled vessels that Northwest *declared* to WQIS. Both the premium to be paid by Northwest under the WQIS Policies and the limits of coverage are premised and based on the tonnage of each vessel to be insured, if any.

---

[1] The Identified Parties include the Third-Party Plaintiffs and eleven insurers, including insurers Great American and Argonaut.

THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

PDX\101983\171030\ASM\15776181.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Yet after more than six years of litigation, there is no evidence that Northwest declared *any* vessels to WQIS, or paid premium with respect to any vessel that it sought to insure. Nor has WQIS been presented with any evidence or any allegation from the Underlying Actions that the pollution at issue emanated from *any* vessel (whether declared or not) during the period that Northwest was insured by WQIS.

Accordingly, for the purposes of the upcoming trial on duty-to-defend issues, there is no evidence that coverage exists under the WQIS Policies for the liability alleged in the Underlying Actions. It would be both inequitable and contrary to the unambiguous terms of the WQIS policies to require WQIS to contribute to defense costs under these circumstances. Therefore, WQIS respectfully requests that the Court stay this action with respect to WQIS until the indemnity phase of this litigation, when the underlying causes of the pollution at issue can be disclosed by the Third-Party Plaintiffs without risk of prejudicing their position in the Underlying Actions.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The WQIS Policies Insuring Northwest

WQIS insured Northwest under WQIS Policy No. 10-4256 02 for the period August 19, 1981 to August 19, 1982. (Diamond Decl. ¶ 9; Diamond Decl. Ex. 1).[2]

/ / /

/ / /

---

[2] References to "Woods Decl." are to the Declaration of John M. Woods, dated April 23, 2015, submitted in support herewith, and references to "Woods Decl. Ex. ___" refer to the designated exhibit (document or excerpt from a deposition transcript) included with that Declaration. References to "Diamond Decl." are to the Declaration of Harry J. Diamond, dated April 23, 2015, submitted in support herewith, and references to "Diamond Decl. Ex. ___" refer to the designated exhibit included with that Declaration. References to "Flanagan Decl. Ex. ___" are to the designated exhibit included with the Declaration of Brien J. Flanagan, dated April 23, 2015, and submitted under seal in support herewith.

Page 3 -    THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Northwest renewed its coverage on the same terms for the period August 19, 1982 to August 19, 1983 under WQIS Policy No. 10-4256 03.  (Diamond Decl. ¶ 9; Diamond Decl. Ex. 2).

WQIS stipulates that Northwest renewed its coverage on substantially the same terms for the period August 19, 1983 to August 19, 1984 under WQIS Policy No. 10-4256 04, except that Policy No. 10-4256 04 added coverage for specified CERCLA liability under the WQIS CERCLA Endorsement of the December 18, 1981 form.  (Diamond Decl. ¶ 10).  This policy is missing, however.  (Diamond Decl. ¶¶ 8-9).

WQIS stipulates that Northwest renewed its coverage under WQIS Policy No. 10-4256 05 for the period August 19, 1984 to August 19, 1985.  (Diamond Decl. ¶ 10).  Policy No. 10-4256 05 contained substantially the same terms as the subsequent Policy No. 10-4256 06.  (Diamond Decl. ¶ 10; Diamond Decl. Ex. 7).  This policy is also missing.  (Diamond Decl. ¶¶ 8-9).

WQIS insured Northwest under WQIS Policy No. 10-4256 06 for the period August 19, 1985 to August 19, 1986.  (Diamond Decl. ¶ 9; Diamond Decl. Ex. 3).

Northwest renewed its coverage on substantially the same terms for the period August 19, 1986 to August 19, 1987 under WQIS Policy No. 10-4256 07.  (Diamond Decl. ¶ 9; Diamond Decl. Ex. 4).  The only change was the replacement of the requirement that Northwest pay a deposit premium of $250 with the requirement that it pay a minimum earned annual premium of $100 at inception.  (*Compare* Diamond Decl. Ex. 3 at NWMAR032963 *with* Diamond Decl. Ex. 4 at NWMAR032995; *see also* Diamond Decl. Ex. 8).

/ / /

/ / /

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Northwest renewed its coverage on the same terms for the period August 19, 1987 to August 19, 1988 under WQIS Policy No. 10-4256 08.  (Diamond Decl. ¶ 9; Diamond Decl. Ex. 5).

Northwest renewed its coverage on the same terms for the period August 19, 1988 to August 19, 1989 under WQIS Policy No. 10-4256 09.  (Diamond Decl. ¶ 9; Diamond Decl. Ex. 6).

WQIS Policy No. 10-4256 09 was cancelled effective April 14, 1989.  (Diamond Decl. Ex. 9).

Accordingly, WQIS insured Northwest under policies in effect from August 19, 1981 to April 14, 1989 (references herein to the "WQIS Policies" or the "WQIS Policies at issue" refer to the WQIS policies insuring Northwest during this period with Policy Nos. 10-4256 02 through 10-4256 09).  However, as described below, it does not appear that Northwest ever declared any insured vessels under these WQIS policies.

## B.    Procedural History

In an exhibit to the Second Amended Third-Party Complaint, Third-Party Plaintiffs listed several WQIS Policies that they alleged provided defense and indemnity coverage for the Underlying Actions.  *See* Exhibit 1 to Second Amended Answer, Affirmative Defenses, and Counterclaims to Complaint for Declaratory Judgment and Third Party Complaint at 8 (Dkt. No. 153-2).  The listed WQIS policies with numbers 10-7204 01 through 10-7204 08 were associated with Southwest Marine Inc., while those with numbers 10-4256 02 through 10-4256 08 were associated with Northwest.  *Id.*; (Woods Decl. Ex. 16 at WQIS0000431).

At the request of the Third-Party Plaintiffs, and pursuant to the Case Management Order dated July 7, 2009, WQIS conducted thorough searches of its hard copy and electronic records

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

for any policy documents as well as related correspondence and claims documents concerning either Northwest or Southwest Marine, Inc.  (Diamond Decl. ¶ 3).

WQIS was able to locate, and subsequently produced, copies of policy documents and related underwriting documents for policies insuring Southwest Marine, Inc. (Policies Nos. 10-7204 01 through 10-7204 08).  (Diamond Decl. ¶ 4).  WQIS was unable to locate any policy documents or related correspondence or claims files with respect to policies insuring Northwest.  (Diamond Decl. ¶ 8).

In the course of discovery, the Third-Party Plaintiffs have produced copies of WQIS policies insuring Northwest with policy numbers 10-4256 02 through 10-4256 03, and 10-4256 06 through 10-4256 09.  (Diamond Decl. ¶ 9; Diamond Decl. Exs. 1-6).

By letter dated January 24, 2011, counsel for the Third-Party Plaintiffs agreed to drop the policies insuring Southwest Marine, Inc. (10-7204 01 through 10-7204 08) from this litigation after acknowledging that the vessel insured under these policies operated only in California and never in Portland.  (Woods Decl. Ex. 16 at WQIS0000432).

Pursuant to the Case Management Order dated October 28, 2014, all parties to the preliminary trial on all contractual and contribution issues relating to the duty to defend were directed to serve on all parties "a designation of all insurance policies and all parties they contend must participate in the duty to defend, have an obligation to reimburse or otherwise pay defense costs, or which any Identified Party believes should otherwise be allocated a share of defense costs, on or before December 19, 2014."  (Dkt. No. 607 at ¶ 1).

The Third-Party Plaintiffs, including the named insured Northwest, did not include any WQIS policy in its designation.  (Dkt. No. 627 at 2-3).

Page 6 -    THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

PDX\101983\171030\ASM\15776181.1

The only parties to include WQIS policies in their designations were the insurers Great

American and Argonaut.[3]

## III.    STANDARD OF REVIEW AND BURDENS

Summary judgment should be granted if "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a) (2015).  The moving party has the burden of establishing the absence of a

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91

L. Ed. 2d 265 (1986).  "When the nonmoving party has the burden of proof at trial, the moving

party need only point out that 'that there is an absence of evidence to support the nonmoving

party's case.'"  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477

U.S. at 325).  Summary judgment should be entered against "a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

An insurer seeking contribution for defense costs under the Oregon Environmental

Cleanup Assistance Act (the "OECAA") bears the burden of proof, by preponderance of the

evidence, of "proof that defendant insurers have a duty to contribute to the defense and proof of

the amount of contribution necessary as damages."  *Fireman's Fund Ins. Co. v. Oregon Auto.*

*Ins.,* CV 03-0025-MO, 2010 WL 1542552, *5 (D. Or. 2010) *vacated and remanded on other*

*grounds sub nom., Fireman's Fund Ins. Co v. North Pacific Ins. Co.,* 446 Fed Appx. 909 (9th

---

[3] Great American designated the WQIS policies that insured Northwest (10-4256 02 through 10-4256 09). (Dkt. No. 622 at 4-5).  Argonaut listed the same WQIS policies that the Third-Party Plaintiffs originally included in Exhibit 1 to their Second Amended Complaint, i.e., both the policies issued to Northwest and Southwest Marine, Inc.  (Dkt. No. 626 at 4; *see also* Dkt. No. 153-2)  Argonaut was not copied on the Third-Party Plaintiffs' stipulation to drop the policies that insured Southwest Marine, Inc.  (*See* Woods Decl. Ex. 16 at WQIS0000432).  This stipulation has been brought to the attention of Argonaut, which has advised that it is considering whether it will also drop its designation of the Southwest Marine Policies issued by WQIS.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

Cir. 2011).  "Where one insurance company is demanding contribution from another, it is elementary that a right to contribution can rise no higher than the right of the alleged insured to compel his insurer to cover the loss." *Oregon Farm Bureau Ins. Co. v. Safeco Ins. Co. of America*, 249 Or. 449, 453, 438 P.2d 1018 (1968) (en banc).  "Interpretation of an insurance policy is a question of law, and [the task of the Court] is to ascertain the intention of the parties to the insurance policy . . . based on the terms and conditions of the insurance policy." *Hoffman v. Foremost Signature Ins. Co.*, 989 F. Supp. 2d 1070, 1079 (D. Or. 2013) quoting *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649-50, 147 P.3d 329 (2006) (internal quotations and citations omitted).

## ARGUMENT

### IV.    THE WQIS POLICIES DO NOT INCLUDE A DUTY TO DEFEND

The Court should grant partial summary judgment to WQIS because the WQIS Policies do not include a duty to defend.  "An insurer does not have a duty to defend if there is no contractual obligation to defend.  The language of the contract governs . . . and therefore an insurance policy may relieve the insurer of its duty to defend, or give the insurer the right, but not the duty to defend."  14 Steven Plitt, et al., Couch on Ins. 3d § 200:5 3d (Westlaw 2014); *see also Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or.App. 222, 226, 925 P.2d 1241, 1243 (1996) (noting "the duty to defend is a contractual duty" and analyzing same under general principles of contract law).

The WQIS Policies at issue in this case do not contain a duty to defend.  Subject to their terms and conditions, the WQIS policies provide instead for indemnity (i.e., reimbursement) of defense costs incurred by the insured in defending against specific statutory liability arising from

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

discharges, releases or threats of releases from vessels whose identity, tonnage and time "at risk" have been declared to WQIS.

Each of the WQIS Policies at issue was based on the June 1, 1976 "Water Quality Insurance Syndicate Clauses," (the "1976 Clauses") as modified by several endorsements.[4] Section A of the 1976 Clauses provides that, subject to the terms and conditions of the Policy, "the Insurers . . . agree to indemnify the Assured for costs, charges and expenses incurred in defending against any liability insured against hereunder." (Diamond Decl. Ex. 4 at NWMAR032997, ll. 31-32). The "liability insured against" under Section A is limited to "amounts as the Assured shall, <u>as owner or operator of said Vessel</u> [declared on the Declarations page], have become liable to pay and shall pay, by reason of or with respect to" liability arising under specific provisions of the Federal Water Pollution Control Act of 1972. (*Id.* at ll. 1-4) (emphasis added).[5] Further, the WQIS Policies at issue provide that WQIS shall not be liable to

---

[4] For ease of reference, except where otherwise indicated, citations to policy provisions in the following discussion are to WQIS Policy 10-4256 07 (Diamond Decl. Ex. 4). All of the WQIS Policies at issue contain: (1) the June 1, 1976 Water Quality Insurance Syndicate Clauses; (2) a Clean Water Act 1977 Endorsement ("Endorsement No. 1"); (3) an endorsement modifying Section A of the Water Quality Insurance Syndicate Clauses June 1, 1976 to, *inter alia*, refer to the 1978 Amendments to the Federal Water Pollution Control Act ("Endorsement No. 2"); (4) a Ship Repairer's Endorsement of the October 1, 1978 form; (5) a premium schedule; (6) a page listing the subscribers to the policy; and (7) a declarations page. (*See generally* Diamond Decl. Exs. 1 to 6). Policy Nos. 10-4256 06 through 10-4256 09 also contain a CERCLA Endorsement of the December 18, 1981 form ("Endorsement No. 3"). (Diamond Decl. Exs. 3 to 6, beginning at NWMAR032969; NWMAR032990; MG216436; and MG213260, respectively). As noted above, WQIS stipulates that Policies 10-4256 04 and 10-4256 05 contained the foregoing terms, including the CERCLA Endorsement of the December 18, 1981 form.

[5] Endorsement No. 1 of each WQIS policy at issue amended the 1976 Clauses so that, *inter alia,* references to the Federal Water Pollution Control Act ("the Act") included certain amendments to the Act made by the Clean Water Act of 1977. *Id.* at NWMAR032993. Similarly, Endorsement No. 2 amended the 1976 Clauses so that, *inter alia*, references to the Act included both the 1977 and 1978 amendments to certain sections of the Act. *Id.* at NWMAR032992. Read together with these endorsements, Section A provides indemnity for liability defined by certain provisions of Section 311 of the Act, which impose specified liabilities for costs of pollution removal and natural resource restoration arising from discharges of oil or hazardous substances from a vessel or a facility. *See* Federal Water Pollution Control Act at § 311, as amended and codified at 33 U.S.C. § 1321 (1981). However, while Section 311 of the Act refers to liability arising from discharges from vessels or facilities, Section A of the WQIS Policy limits coverage only for amounts that the Assured becomes liable and pays as owner or operator of a vessel listed on the declarations page. (Diamond Decl. Ex. 4 at NWMAR032997, ll. 1-4).

THIRD-PARTY DEFENDANT WATER QUALITY
            INSURANCE SYNDICATE'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

indemnify Northwest for defense costs unless they were incurred with the written consent of WQIS. *Id.* at ll. 57-59.

Similarly, the CERCLA Endorsement form of December 18, 1981 included in some of the WQIS Policies at issue does not provide for a duty to defend, but instead provided that WQIS "shall <u>not</u> be liable to indemnify the Assured for any costs, charges or expenses incurred in investigating or defending against any claim insured against under this Endorsement unless the same shall have been incurred with the written consent of the Insurers . . . ." (Diamond Decl. Ex. 4 at NWMAR032991, ¶ 6) (emphasis added).[6]  The liability "insured against" under the CERCLA Endorsement is limited to "amounts as the Assured shall, as Builder, Repairer or Scrapper . . . <u>of the Vessels declared as provided for in the policy</u>, have become liable to pay and shall pay, by reason of or with respect to any liability imposed on the Assured pursuant to Section 107(a)(1) of [CERCLA]."  (Diamond Decl. Ex. 4 at NWMAR032990) (emphasis added). Section 107(a)(1) of CERCLA provides that the "owner or operator of a vessel . . . or a facility . . . <u>from which there is a release,</u> or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for [specified pollution removal and

---

[6] The Third-Party Plaintiffs never obtained the written consent of WQIS to indemnify the Third-Party Plaintiffs for their defense costs in the Underlying Actions.  Diamond Decl. at ¶ 11.  Such consent requirements are enforceable as written in policies of marine insurance providing for indemnification of defense costs. *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.,* 255 Or.App. 524, 545-49, 300 P.3d 1224 (2013).  In *ZRZ*, the Court of Appeals of Oregon rejected an insured's argument that, although certain ship dismantling policies did not provide for a duty to defend, as in traditional comprehensive general liability coverage, the policy nonetheless required the insurer to pay defense costs incurred in defending an underlying environmental action. *Id.* at 546.  Like the WQIS Policies at issue, the ship dismantling policies provided that the insurers would indemnify the insured for defense costs incurred "when the liability of [the insured] has been contested with the consent in writing of [the insurer]." *Id.* at 545.  The trial court concluded that "[t]hese are not regular duty to defend policies.  This is a choice that can be decided by the insurer.  The language is neither vague nor ambiguous.  [The insurer] may choose to defend or not to defend." *Id.* at 546.  The Court of Appeals agreed. *Id.* at 547.  The Court of Appeals rejected the insured's argument that "an insurer should not be able to rely on such a right while at the same time denying that it owes its policyholder any policy obligation whatsoever." *Id.* at 549.  The Court concluded that "the trial court did not err in ruling that [the insured] failed to satisfy the *unambiguous predicate for coverage of defense costs* under the ship dismantling policies." *Id.* (emphasis added).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

response costs]."  Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub. L. No. 96-510 § 107(a)(1), 94 Stat. 2767 (1980).

Thus, the defense cost provisions of both Section A of the WQIS Policies and the CERCLA Endorsement provide for reimbursement of costs actually incurred by the insured in defending against specified statutory liability relating to discharges, releases or threatened releases from specifically declared vessels.  Neither provision provides for a duty to defend, and no other provision of the WQIS Policies at issue provides for payment of defense costs.  (*See generally* Diamond Decl. Ex. 4).[7]

## V.    NORTHWEST FAILED TO MEET REQUIREMENTS UNDER THE WQIS POLICIES THAT WERE NECESSARY TO TRIGGER INDEMNIFICATION.

Great American or Argonaut may argue that the indemnification language in the WQIS Policies obligate WQIS to defend or pay for Third-Party Plaintiffs' defense costs.  But even if the Court were to determine that the indemnification/reimbursement language in the WQIS Policies imposed a duty to defend, which the Court should not, WQIS is still entitled to partial summary judgment because no question of fact exists that Northwest failed to meet conditions set out in the WQIS Policies that were necessary in order to impose the reimbursement requirement.  Specifically, Northwest did not meet the WQIS Policies' requirements because (1) Northwest failed to declare any vessels under the WQIS Policies, as required by the WQIS

---

[7] Although Section B of the WQIS 1976 Clauses includes provisions for payment of defense costs incurred in defending against certain liabilities arising from the sudden and accidental discharge of pollutants from vessels declared and insured under the policy, Section B of the WQIS 1976 Clauses is inapplicable to the WQIS Policies at issue in this litigation.  The declarations page of each WQIS policy issued to Northwest indicates that Section B is "NOT APPLICABLE." (Diamond Decl. Ex. 4 at NWMAR032994).  Consistent with this, the premium schedule included with each policy provides only for premium under Section A and, for those policies including the CERCLA Endorsement, a surcharge for CERCLA coverage with respect to insured vessels.  (*Id.* at NWMAR032995; *see also* Diamond Decl. Ex. 1 at MG2022466 (the premium schedule of WQIS Policy No. 10-4256 02, which does not include a CERCLA Endorsement)).

Page 11 -    THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

Policies, (2) Northwest failed to pay the premium necessary to insure vessels under the WQIS

Policies; and (3) no evidence exists that an event that would fall under the reimbursement

requirement ever occurred, nor has such an event been alleged in the Underlying Actions.

**A.      The WQIS Policies Required Northwest to Declare Vessels it Sought to Insure**

Every WQIS Policy issued to Northwest contained a Ship Repairer's Endorsement of the

October 1, 1978 form (the "Ship Repairer's Endorsement").  (*See, e.g.*, Diamond Decl. Ex. 4 at

NWMAR032996).  The Ship Repairer's Endorsement amends Section A so that references to

"Vessel" mean those vessels for which Northwest was required to file evidence of its financial

responsibility under the Federal Water Pollution Control Act, as amended by the Clean Water

Act of 1977,[8] provided such evidence was filed under a Master Certificate in accordance with 46

C.F.R. Part 542.11(a). (Diamond Decl. Ex. 4 at NWMAR032996).  The Ship Repairer's

Endorsement required Northwest to "furnish [WQIS], promptly, with a copy of the report which

the Assured is obligated to file with the Federal Maritime Commission every six months in

accordance with 46 C.F.R. part 542.11(e)."[9]  (Diamond Decl. Ex. 4 at NWMAR032996).  Any

vessel which Northwest was not obligated to declare to the Federal Maritime Commission was

expressly excluded.  *Id.*  Consistent with this reporting requirement, the declarations page of

each WQIS policy issued to Northwest provided that vessels were "to be declared as provided

---

[8] The Act provides that the owner or operator of a vessel is required to submit proof of financial responsibility with respect to vessels that were (1) over three hundred gross tons and (2) were self-propelled or (3) carried oil or hazardous substances as cargo or fuel.  33 U.S.C. § 1321(p)(1) (1981). *See also* the letter dated February 14, 1986 from Northwest's insurance broker explaining which vessels must be reported.  (Woods Decl. Ex. 1).

[9] 46 C.F.R. part 542.11(e) requires an entity to which a Master Certificate of financial responsibility has been issued to submit to the Federal Maritime Commission a report every six months that includes the identity and gross tonnage of each vessel covered by the Master Certificate during the six month reporting period. 46 C.F.R. § 542.11(e) (1981).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

for under policy terms and conditions." (*Id.* at NWMAR032994). Further, the CERCLA Endorsement included in some of the WQIS Policies issued to Northwest only provided coverage with respect to "Vessels declared as provided for in the policy." (*Id.* at NWMAR032990).

### B.    There is No Evidence That Northwest Ever Declared Vessels to WQIS

In the seven years since the Third-Party Plaintiffs first notified WQIS of their involvement with the underlying environmental actions concerning the Portland Harbor Superfund Site, and despite the tens of thousands of pages of documents produced, Third-Party Plaintiffs have not provided one report evidencing that Northwest ever declared vessels to WQIS, as required under the WQIS Policies issued to Northwest, despite multiple requests for such evidence. Nor do WQIS' files contain any such report. (Diamond Decl. ¶ 5).

On October 13, 2010, WQIS, through its counsel, notified counsel for Northwest that based on a search of WQIS' records, Northwest never declared any vessels as being at risk. (Woods Decl. Ex. 15 at WQIS0000428). By letter dated January 24, 2011, counsel for Northwest acknowledged that Northwest was required to report vessels on a bi-annual basis as they came at risk, but argued that Northwest did declare vessels as being at risk, and was charged premium accordingly. (Woods Decl. Ex. 16 at WQIS0000431). However, none of the documents cited in the January 24th letter shows that such declarations were ever made to WQIS, or that premium with respect to declared vessels, if any, was ever paid. (*See generally* Woods Decl. Ex. 17). The cited documents consist of correspondence and attachments exchanged between Northwest and its broker, Marsh & McLennan, and do not indicate that WQIS ever received any vessel declarations or premium with respect to vessels that Northwest sought to insure, if any. *Id.*

Page 13 -    THIRD-PARTY DEFENDANT WATER QUALITY
            INSURANCE SYNDICATE'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

WQIS subsequently served the Third-Party Plaintiffs with requests for production of all documents and communications relating to the declaration of vessels, or identifying vessels that were insured under any WQIS Policy.  (Woods Decl. Ex. 20 at 8-9 (Request Nos. 3-4)).  The Third-Party Plaintiffs responded that, subject to certain objections, they had or would produce responsive documents, if any.  (Woods Decl. Ex. 23 at 6-7).  However, none of the documents produced to WQIS by the Third-Party Plaintiffs indicates that Northwest ever declared vessels to WQIS, or that any other person or entity provided such declarations to WQIS on behalf of Northwest.  (Woods Decl. ¶ 3).

Nor can former employees of Northwest who would be expected to know about declarations of vessels to WQIS for insurance purposes recall ever having seen one.  Dale Weitzel, who worked for Northwest from 1980 through approximately 1985 first as an accounting manager and then as a risk manager involved in procuring insurance, did not recall ever seeing any declarations of vessels made to WQIS, or have knowledge of any such reports being submitted.  (Flanagan Decl. Ex. 1 at p. 12, ll. 11-21, p. 13, ll. 18-21, p. 15, ll. 11-20, p. 47, ll. 13-19, p. 49, ll. 9-14).  Moreover, Mr. Weitzel would expect records of such declarations to have been retained by Northwest if they existed. (*Id.* at p. 48, ll. 6-8, 11-12).  Likewise, William Johnston, who began working at Northwest Marine Iron Works in February of 1989 and served as General Manager of Northwest Marine beginning that year, never saw any reports or lists of vessels submitted to WQIS for the purpose of obtaining coverage under WQIS policies.  (Woods Decl. Ex. 22 p.14, ll. 5-7, p.16, ll. 4-14, p. 30, ll. 20-25).  He too would have expected such records to have been retained, if they existed.  (*Id.* at p. 31, ll. 8-11).

Similarly, Northwest's insurance broker has no records showing that Northwest declared vessels to WQIS.  Northwest used Marsh & McLennan, Inc. as its insurance broker during the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

1980s.  (Flanagan Decl. Ex. 1 at p. 14, ll. 21-25, p. 15, ll. 1-10, p. 16, ll. 18-21; *see also* Woods

Decl. Ex. 17 at NWM208201 (a letter from the Portland office of Marsh & McLennan, Inc.

forwarding policy documentation evidencing coverage under WQIS Policy No. 10-4256 06)).

Marsh & McLennan, Inc. has since changed its name to Marsh USA Inc. (hereinafter "Marsh").

(Woods Decl. Ex. 26 at 2).  By a subpoena dated September 17, 2014 (the "Subpoena"), WQIS

requested that Marsh produce, *inter alia*, any and all documents or other evidence of any

communication relating to declarations or disclosures by Northwest to WQIS of vessels that

Northwest sought to insure under any WQIS Policy issued to Northwest, or such

communications between Marsh and WQIS, or between Marsh and Northwest.  (Woods Decl.

Ex. 27 at Schedule A, pp. 2-3 (Request Nos. 1-3)).  Despite a thorough and diligent search of

Marsh's archive files, no responsive documents were located by Marsh.  (Woods Decl. Ex. 28 at

1).

### C.    Vessel Declarations Dictate the Premium to Be Paid Under the WQIS Policies and the Limits of Coverage Afforded By the WQIS Policies

The vessel declarations are critical to determining the existence and extent of coverage

under the WQIS Policies, as the required premiums and limits of coverage are calculated on a

per-vessel basis pursuant to each vessel's declared tonnage and time "at risk."  Each of the

WQIS Policies at issue incorporated a "Premium Schedule" that specified the means of

calculating premium to be paid in order to insure vessels, and the limits of liability with respect

to each insured vessel.  (Diamond Decl. Ex. 4 at NWMAR032995).   The WQIS Policies provide

for tiered premium rates based on gross registered ton-days per annum, i.e., the tonnage of each

declared vessel multiplied by the number of days Northwest was responsible for the vessel or "at

risk" for the purposes of the statutory liability covered by the policies.  (*Id.*).  Consistent with the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

vessel declaration requirement of the Ship Repairer's Endorsement, the Premium Schedule provides that "WQIS will require G.R.T. [Gross Registered Ton] and number of days the assured is at risk on such vessels, reported semi-annually." (*Id.*). For those WQIS Policies at issue that included the CERCLA Endorsement, the Premium Schedule provided that CERCLA coverage premium was "10% of Section A premium," or 10% of the premium calculated on the basis of gross registered ton-days. (*Id.*).

The Premium Schedule of each WQIS Policy provided that with respect to coverage under Section A, "[n]otwithstanding anything to the contrary stated herein, the limit of liability hereunder, is not to exceed $150.00 per G[.]R[.]T. of each insured vessel or $20,000,000.00 whichever is the lesser, each vessel separately insured." (*Id.*).[10] Similarly, for those WQIS Policies at issue that incorporated the CERCLA Endorsement, the Premium Schedule provides that the "limit of liability under CERCLA coverage is not to exceed $300.00 per gross ton, or $500,000 whichever is greater, each vessel separately insured." (*Id.*). The Premium Schedule further limited coverage to "attach only on those vessels coming at risk, as set forth in the Ship Repairers Endorsement Attached to this Policy." (*Id.*).

Accordingly, it was incumbent on Northwest to pay premium calculated on the basis of declarations stating the identities, tonnage and time at risk of vessels, if any, that it sought to insure under the WQIS Policies at issue. Such declarations were necessary not just to calculate premium, but also to establish the limits of liability insured with respect to each separately insured vessel, if any.

---

[10] Consistent with the Premium Schedule, the declarations page of the policy states "Vessel(s) to be declared as provided for under policy terms and conditions" in the space below "limit liab[ility]" and "premium." (*Id.* at NWMAR032994).

Page 16 -   THIRD-PARTY DEFENDANT WATER QUALITY
            INSURANCE SYNDICATE'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

**D.    There is No Evidence That Northwest Ever Paid Premium to Insure Vessels Under the WQIS Policies at Issue**

Just as there is no evidence that Northwest ever declared vessels to WQIS, there is also no evidence that Northwest ever paid premium with respect to vessels that it sought to insure, if any, as required by the WQIS Policies at issue. The Third-Party Plaintiffs have long been on notice of this lack of evidence, but after years of litigation, and despite requests from WQIS, they have not provided any evidence of such premium payments. Nor has WQIS located any record of premium payments by Northwest with respect to vessels to be insured under the WQIS Policies at issue. (Diamond Decl. ¶ 7).

The October 13, 2010 letter from counsel for WQIS to counsel for the Third-Party Plaintiffs concerning the lack of vessel declarations also advised that WQIS' records indicated that Northwest never paid any premium with respect to any specific vessel. (Woods Decl. Ex. 15 at WQIS0000428). As noted above, counsel for the Third-Party Plaintiffs responded with a January 24, 2011 letter citing documents that purportedly showed Northwest was charged premium in accordance with vessel declarations. (Woods Decl. Ex. 16 at WQIS0000431). The cited documents, however, consist only of correspondence between Northwest and its broker, Marsh. (*See generally* Woods Decl. Ex. 17). Although one attachment to this correspondence includes premium calculations based on gross ton days, the letter forwarding the calculations indicates that the calculations were performed by Marsh, and nothing suggests that these calculations were sent to WQIS. (*Id.* at NWM208185-86). Further, even if the documents cited in the January 24th letter provided support for the proposition that Northwest was "charged" premium, they do not indicate that Northwest ever *paid* premium.

Page 17 -    THIRD-PARTY DEFENDANT WATER QUALITY
    INSURANCE SYNDICATE'S MOTION FOR PARTIAL
    SUMMARY JUDGMENT
    PDX\101983\171030\ASM\15776181.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

WQIS requested that the Third-Party Plaintiffs produce all documents and communications relating to the payment of premium for coverage under WQIS Policies issued to or insuring Northwest.  (Woods Decl. Ex. 20 at 9 (Request No. 5)).  Subject to certain objections, the Third-Party Plaintiffs responded that they had or would produce responsive documents.  (Woods Decl. Ex. 23 at 7).  However, the Third-Party Plaintiffs have not produced any documents to WQIS showing that Northwest paid premium with respect to specific vessels that it sought to insure, if any.  (Woods Decl. ¶ 4).[11]

WQIS also requested in an interrogatory that the Third-Party Plaintiffs identify the vessel(s), if any, for which Northwest paid premium and obtained coverage under a WQIS Policy.  (Woods Decl. Ex. 21 at 7 (Interrogatory No. 2)).  The Third-Party Plaintiffs responded by citing several documents purported to contain the "list of vessels covered under WQIS policies."  (Woods Decl. Ex. 24 at 6).  However, although several of the cited documents contain lists of vessels and include correspondence between Northwest, Marsh and the U.S. Coast Guard, they do not include any correspondence with WQIS, or any record indicating payment of premium with respect to the vessels listed.  (*See generally* Woods Decl. Ex. 25).

Moreover, despite being an assistant treasurer and a risk manager at Northwest during the 1980s, Mr. Weitzel testified that he did not know whether Northwest ever paid any additional premium based on gross registered ton-days.  (Flanagan Decl. Ex. 1 at p. 12, ll. 11-21, p. 13, ll. 18-21, p. 14, ll. 15-20, p. 49, ll. 15-23).  However, he stated that if such payment were due, it

---

[11] One invoice from Marsh to Northwest was located and produced by the Third-Party Plaintiffs, but it is for the $100.00 minimum premium which WQIS began charging Northwest in 1986.  (Woods Decl. Ex. 2; *see also* Diamond Decl. Ex. 8).  The fact that this invoice has been located suggests that if Northwest had paid any premium for actual declared vessels, there would have been a copy of an invoice for that premium in Northwest's files for that year as well.  However, no such invoice has been located.  Additionally, the fact that WQIS began charging Northwest a minimum (and minimal) $100 in premium annually suggests that WQIS has not previously been receiving premium for providing the ship repairer's coverage to Northwest.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

would have been paid through his financial division, and Northwest would have a record of such payment being made.  (*Id.* at p. 49, ll. 24-25, p. 50, ll. 2-4, 6-16, p. 52, ll. 5-9).  Similarly, Mr. Johnston would have expected Northwest to have kept records of the amounts paid for premiums.  (Woods Decl. Ex. 22 at p. 35, ll. 24-25, p. 36, ll. 4).

Nor does Northwest's insurance broker, Marsh, have any records of premium being paid to WQIS with respect to vessels that it sought to insure.  The Subpoena that WQIS served on Marsh requested all documents and communications concerning premium calculations, premium owed, or premium paid with respect to vessels Northwest sought to insure under any WQIS Policy, irrespective of whether such documents were exchanged between Marsh and Northwest or between Marsh and WQIS.  (Woods Decl. Ex. 27 at Schedule A, p. 3 (Request Nos. 4-5)).  Marsh responded that no responsive documents were located.  (Woods Decl. Ex. 28  at 1).

### E.    There is No Evidence That a Discharge or Release of Oil or Other Hazardous Substance From a Vessel Insured By WQIS Ever Occurred

The WQIS Policies at issue required Northwest to "give immediate notice" to WQIS of any occurrence "which may result in a loss, damage or expense for which [WQIS] are or may become liable to indemnify [Northwest]" under Section A of the Policies.  (Diamond Decl. Ex. 4 at NWMAR032997, ll. 51-55).  Likewise, for those policies containing the CERCLA Endorsement, Northwest was required to provide immediate notice of any incident which may result in damages for which WQIS might become liable to indemnify Northwest under that endorsement.  (Diamond Decl. Ex. 4 at NWMAR032990, ¶ 5).

Accordingly, if there had been a discharge or release from a vessel that could give rise to a claim under a WQIS Policy, Northwest should have provided notice of it to WQIS.  Otherwise, Northwest would be time-barred from making a claim.  WQIS has no record of any such notice

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

ever being provided by Northwest.  (Diamond Decl. ¶ 6). Similarly, the documents produced by Northwest and its broker Marsh are devoid of any evidence that notice of any discharge, spill or emission from any vessel was ever communicated to WQIS.

**F.    The WQIS Policies Do Not Provide Coverage For the Allegations Against the Third-Party Plaintiffs in the Underlying Actions**

For policies of marine liability insurance that require declaration of vessels to be insured, coverage extends only to liability incurred with respect to specifically declared vessels.  *See Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 203 (5th Cir. 1990) ("Insurance coverage under a [Protection and Indemnity] policy extends only to the liability the insured incurs in its capacity as an owner, operator, or charterer of the vessel/s named in the policy. Since the [policy] contains no mention of the [vessel involved in the accident], that vessel was not covered.").

Specifically, courts have recognized and given effect to this limited scope of coverage under WQIS policies.  In *Delta Seaboard Well Service v. Steadfast Ins. Co.*, 45 Fed. App'x. 326 (5th Cir. 2002), the plaintiff sought coverage under a WQIS pollution liability insurance policy for environmental response costs arising from a spill of pollutants from the barge MOP 22.  *Id.* at *1.    The spill occurred after a crew from another of plaintiff's barges, the MOP 141, created sparks which ignited petroleum stored on the MOP 22.  *Id.*  The court noted that the WQIS policy "covers only those costs incurred by [the plaintiff] 'as owner or operator of the vessel named on the Vessel Schedule attached to and forming part of this policy.'"  *Id.*  While the MOP 141 was a scheduled vessel, the MOP 22 was not.  *Id.*  The Court held that "[b]ecause the incident here was not caused by [the plaintiff] in its capacity as owner or operator of the MOP 141, none of these [liability provisions of the WQIS policy] provide coverage."  *Id.* at *2.

Page 20 -    THIRD-PARTY DEFENDANT WATER QUALITY
INSURANCE SYNDICATE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT

PDX\101983\171030\ASM\15776181.1

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

In the seven years since WQIS was first notified of the Third-Party Plaintiffs' involvement in the Underlying Actions, no party has presented WQIS with *any* allegation of a discharge, release or threatened release of oil or other hazardous substance from *any vessel* during the applicable policy periods, let alone one specifically declared to WQIS.  In the absence of any allegation of liability arising from a discharge or release from a scheduled vessel, there is no basis for requiring WQIS to defend the Third-Party Plaintiffs or otherwise contribute to their defense costs.

Indeed, even if, for the sake of argument, the WQIS policies contained a duty-to-defend provision (which is expressly denied), such a duty would not be triggered by the Underlying Actions.  For policies including a duty-to-defend provision, whether such a duty is triggered depends on whether the policy covers the underlying claim.  *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 89, 37 P.3d 148 (2001).  To answer this question, the court examines two documents: the insurance policy and the underlying complaint.  *Id.* The duty to defend is triggered if the factual allegations of the complaint, without amendment, state a claim for any offense covered by the policy.  *Id.* at 91.  An insurer should be able to determine from the face of the complaint whether to accept tender of the defense of the underlying action.  *Id.* (citing *Ledford v. Gutoski*, 319 Or. 397, 400, 877 P.2d 80 (1994)).  In this regard, it is not enough that the allegations fail to exclude the possibility of a covered liability, as failing to exclude a possibility of an event is not the same as affirmatively alleging that the event has occurred.  *Martin v. State Farm Fire and Cas. Co.*, 146 Or.App. 270, 277, 932 P.2d 1207 (1997).

The initial notice letters concerning the Underlying Actions provided to WQIS on behalf of Northwest and Southwest Marine Inc. in the Spring of 2008 tendered the defense of investigations by the EPA and the Portland Harbor Natural Resource Trustee Council, but

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981
Fax: 503.796.2900

contained no reference to any allegations concerning pollution from a vessel.  (Woods Decl. ¶ 5; Woods Decl. Exs. 8-9).  In letters dated May 23, 2008, WQIS, through its counsel, declined the tender of defense on the basis that, *inter alia*, the tender letters did not refer to any vessel or any allegation that a vessel (whether insured by WQIS or not) was the source of pollution giving rise to the underlying investigations.  (Woods Decl. Exs. 10-11 at 2).  The letters invited counsel for the insured to articulate any other basis for coverage.  (*Id.*).

However, despite this and subsequent requests, the Third-Party Plaintiffs have never presented WQIS with an allegation that the pollution at issue in the Underlying Actions arose from discharges or releases from a vessel insured by WQIS.  (Diamond Decl. ¶ 12).  In its First Set of Interrogatories to the Third-Party Plaintiffs, WQIS asked the Third-Party Plaintiffs to identify any and all vessels insured under WQIS policies from which it is *alleged* in the Underlying Actions that there was a discharge, release or threatened release during the time that the vessel was insured by WQIS. (*See* Woods Decl. Ex. 21 at 7 (Interrogatory No. 3)).  The Third-Party Plaintiffs gave a non-responsive answer, in which they objected that the interrogatory was beyond the scope of the issues to be addressed in the duty-to-defend phase of this litigation, and speculated that all of the vessels listed in Northwest's correspondence with its broker "could have" caused a discharge, release or threatened release.  (Woods Decl. Ex. 24 at 6-7).  This evades the question, which relates not to whether there *was* a discharge from a vessel, but whether there has been an *allegation* of a discharge from a vessel in the Underlying Actions.

/ / /

/ / /

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

In fact, none of the agency communications tendered to WQIS by the Third-Party Plaintiffs, or produced by the Third-Party Plaintiffs as so-called "suit documents" that allegedly trigger a duty to defend,[12] contains an allegation of a discharge, spill or release from, or caused by, *any* vessel during the periods that WQIS insured Northwest.  (Woods Decl. ¶ 6; Woods Decl. Exs. 3-9, 12-14, 18-19; Diamond Decl. ¶ 12).  This includes the agency communications that this Court previously held combined to achieve the equivalent of a "suit" for the purposes of the duty-to-defend provisions of several Comprehensive General Liability policies.[13]  For example, the March 12, 2010 General Notice Letter from the EPA to the Marine Group stated that the EPA had reason to believe that hazardous substances have been or are being released from various "facilities" and make no makes no mention of vessels.  (Woods Decl. Ex. 12 at WQIS0000345-46).

## CONCLUSION

For the foregoing reasons, WQIS respectfully requests that the Court enter an order that (1) the WQIS Policies provide no duty to defend, (2) that WQIS has no current duty to contribute to defense costs of the Third-Party Plaintiffs, (3) that WQIS is excused from the upcoming preliminary trials on duty-to-defend issues and the reasonableness and necessity of defense costs,

---

[12] As noted above, the Third-Party Plaintiffs no longer assert that WQIS has a duty to defend or is otherwise required to contribute to defense costs.

[13] Specifically, the Court noted that the following agency communications combined to achieve the "suit" equivalent: (1) a January 11, 2008 letter from David Batson, Esq. to Lloyd Schwartz of BAE (Woods Decl. Ex. 3); (2) January 18, 2008 letters from Deb Yamamoto of the EPA to Mr. Schwartz of BAE (Woods Decl. Ex. 4) and Mr. Engel of the Marine Group (Woods Decl. Ex. 5); (3) a January 30, 2008 letter from Mr. Billy Barquin on behalf of the Portland Harbor Natural Resource Trustee Council, which forwards a January 3, 2008 letter inviting participation in a Natural Resource Damage Assessment (Woods Decl. Ex. 6); (4) a March 26, 2008 letter from Mr. Batson to Mr. Engel (Woods Decl. Ex. 7); (5) the March 12, 2010 General Notice Letters from the EPA directed to the Marine Group and BAE, which were tendered to WQIS by letters dated March 22, 2010 and April 20, 2010, respectively (Woods Decl. Exs. 12-13); and (6) the September 27, 2010 letter from Erin Madden of the Portland Harbor Trustee Council directed to the Marine Group and BAE, which was tendered to WQIS by letter dated September 28, 2010 (Woods Decl. Ex. 14).  *Century Indem. Co. v. Marine Group, LLC*, 848 F. Supp. 2d 1238, 1255 (D.Or. 2012).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900

and (4) that this action is stayed with respect to WQIS until the indemnity phase of this litigation commences.

Dated this 24th day of April, 2015.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.


By:    *s/ Brien Flanagan*
       C. Kent Roberts, OSB #801010
       Brien J. Flanagan, OSB #023044
       Anna Helton, OSB #054424
       Telephone (503) 222-9981

       John M. Woods, *Pro Hac Vice*
       George Cornell, *Pro Hac Vice*
       Clyde & Co US LLP
       Telephone (212) 710-3915

       Of Attorneys for Third-Party Defendant,
       Water Quality Insurance Syndicate

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Fax: 503.796.2900