SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
    W. David Campagne, pro hac vice
    dcampagne@spcclaw.com
    Kenneth H. Sumner, pro hac vice
    ksumner@spcclaw.com
Two Embarcadero Center, Suite 1410
San Francisco, California  94111
Tel.: (415) 352-6200; Fax: (415) 352-6224

COSGRAVE VERGEER KESTER LLP
    Thomas W. Brown, OSB #801779
    tbrown@cvk-law.com
888 SW Fifth Avenue, Suite 500
Portland, OR  97204
Tel: (503) 323-9000; Fax: (503) 323-9019

Attorneys for GRANITE STATE INSURANCE COMPANY,
INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
and NATIONAL UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **CENTURY INDEMNITY COMPANY**,<br><br>    Plaintiff,<br><br>v<br><br>**THE MARINE GROUP, LLC**, **et al.**,<br><br>    Defendants. | CASE NO. 3:08-CV-01375-AC<br><br>**GRANITE STATE INSURANCE COMPANY'S AND INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S REPLY TO DEFENDANTS AND THIRD-PARTY PLAINTIFFS' AND GREAT AMERICAN INSURANCE COMPANY'S OPPOSITION TO MOTION TO EXCLUDE EXPERTS DENNIS CONNOLLY AND ROBERT HUGHES**<br><br>Request for Oral Argument |

## I.  INTRODUCTION

In their response to Granite State Insurance Company's ("Granite State's") and Insurance Company of the State of Pennsylvania's ("ICSOP's") motion to exclude experts Dennis Connolly and Robert Hughes, Defendants and Third-Party Plaintiffs The Marine Group, LLC, Northwest Marine, Inc., and Northwest Marine Iron Works and Third-Party Plaintiff BAE Systems San Diego Ship Repair, Inc. (collectively "TPPs"), and Third-Party Defendants Great American Assurance Company and Great American E&S Insurance Company (collectively "Great American") play a rhetorical shell game by attempting to hide their respective expert's improper legal conclusions behind contrived explanations.  Their strained oppositions cannot hide the improper (and incorrect) conclusions reached by Mr. Connolly and Mr. Hughes that Granite State and ICSOP have a duty to defend.

TPPs contend that Mr. Hughes' opinions are not legal conclusions, but rather, "his expert opinion as to what particular clauses signal about the intent of the parties in constructing a complex excess level insurance scheme."  TPPs further contend that "Mr. Hughes does not tell the court how it should interpret the policies or what the law requires of Granite [State]."  TPPs make these contentions despite the fact that Mr. Hughes' report does exactly the opposite.  His report offers his interpretation of policy language and ultimately concludes that Granite State has a duty to defend. As such, his report offers improper legal opinion and is not admissible in this case. Moreover, the fact that Mr. Hughes' opinions are based on circumstances which TPPs admit have not arisen makes his opinion meaningless and completely unhelpful to the Court.

Great American asserts an equally flawed position.  Great American contends that Mr. Connolly does not opine on the duty to defend, but rather, that an "experienced claim handler" would know that ICSOP has a duty to defend.  First, contrary to Great

American's contention, Mr. Connolly's report contains nothing but legal conclusions. In addition, any opinion that an experienced claim handler would know that ICSOP has a duty to defend necessarily contains the presumption that ICSOP does, in fact, have a duty to defend. This is the central question the Court is being asked to address. If the Court determines that ICSOP has such a duty, then Mr. Connolly's opinion may be correct but would still be wholly irrelevant in that it does not matter whether an "experienced claims handler" should have known anything at all. If the Court determines that ICSOP does not have a duty to defend, then Mr. Connolly's opinion would obviously be incorrect and not the subject of proper expert testimony. Either way, his opinion on the subjective understanding of a claim handler does not help the Court to understand the evidence or determine a factual issue. Fed. R. Evid. 702(a). As such, Mr. Connolly's opinion is impermissible.

Both TPPs and Great American point out that the motion does not challenge the portions of Mr. Connolly's and Mr. Hughes' reports that do not address Granite State and ICSOP. TPPs ignore that Granite State and ICSOP joined the motion by Plaintiff Century Indemnity Company and Third- Party Defendant Insurance Company of North America which directly addresses the remainder of Mr. Hughes' report. [Plaintiff Century Indemnity Company's Motion to Exclude Expert Robert Hughes, Docket No. 683.] In the end, however, neither Granite State nor ICSOP are required to move to strike portions of the expert reports and opinions that relate to other defendants. Granite State and ICSOP are frankly perplexed that TPPs and Great American think that Granite State and ICSOP have any obligation to seek to exclude opinions relating to St. Paul or WQIS. The opinions as to those companies have no relevance to whether Granite State or ICSOP have a duty to defend.

Finally, both TPPs and Great American argue that the expert report of Allan Windt

contains improper legal conclusions.[1]  As addressed in its response to TPPs' Motion to Strike Expert Report of Allan Windt [Docket No. 735], Granite State and ICSOP only served Mr. Windt's report to rebut the improper expert reports of Mr. Connolly and Mr. Hughes.  If the Court finds that Mr. Connolly's and Mr. Hughes' expert reports should be stricken, Granite State and ICSOP will withdraw Mr. Windt as a rebuttal expert.  However, the Court cannot properly admit the reports of Mr. Connolly and Mr. Hughes while excluding Mr. Windt's report.  They all contain impermissible legal conclusions on the exact same issue.

## II.   STATEMENT OF FACTS

The relevant facts for the disposition of this motion were included in the Motion [Docket No. 681], and are incorporated by reference in this reply.

## III.  ARGUMENT

### A.   The Parties Agree That Legal Conclusions are Impermissible Expert Testimony

The parties all agree that expert testimony may not include legal opinions.  They also agree that insurance policy interpretation and whether an insurer has a duty to defend is a question of law.  Therefore, to the extent Mr. Connolly, Mr. Hughes and Mr. Windt offer their interpretations of the insurance policies and opine whether Granite State and/or ICSOP have a duty to defend, those opinions are impermissible expert testimony.  Despite Great American's and TPPs' attempts to conceal the impermissible legal conclusions contained in their respective experts' reports, both Mr. Connolly and Mr. Hughes offer their opinions that Granite State and ICSOP have a duty to defend TPPs.  As such, their reports offer legal conclusions and should be stricken by the Court.

---

[1] Only TPPs served a motion to strike Mr. Windt's report.  [Docket No. 714.]  Further, TPPs' motion for sanctions striking expert witnesses James A. Robertson and Barry Lapidus [Docket No. 705] did not include Mr. Windt.  Therefore, any argument made by Great American in its opposition to this motion that Mr. Windt's report should be stricken is improperly noticed, and should not be entertained by this Court.

### B. Mr. Hughes' Report Contains No Factual Analysis Relevant to Whether Granite State and/or ICSOP Have a Duty to Defend

TPPs mischaracterize Mr. Hughes' report as providing factual analyses of how insurance policies are stacked and explanations of evidence that shows the existence of lost policies. TPPs contend that Mr. Hughes' report focuses "solely on the insured and insurers' historic practices in creating insurance coverage schemes, not what the policies legally obligate the insurer to perform." However, Mr. Hughes' written opinions betray this intended focus.

As to Granite State, Mr. Hughes' report begins with a list of the Granite State policies at issue followed by an obvious declaration that they are Umbrella Liability Policies, the policy limits, and identifies the insuring company and the underwriter.[2] That is the extent of any factual analysis offered by Mr. Hughes. Surely the Court does not need an expert opinion to list information that is plainly stated on the declarations page of each policy.

Mr. Hughes then quotes various provisions in the Granite State policies, including the definition of "ultimate net loss," and concludes, "Therefore, the insurer clearly has the responsibility to pay for defense costs and other claims costs attendant to claims made against the insured."[3] He then embarks on a trip down tangent lane, describing various situations where an umbrella insurer <u>may</u> have a duty to defend. The problem for Mr. Hughes and TPPs is that none of these situations have occurred, or are even alleged to have occurred. TPPs admit that no party has alleged exhaustion of the underlying insurance directly below Granite State policies. Mr. Hughes' "factual analysis" of these hypothetical situations, while proper for a Wikipedia page on excess insurance, have no bearing on any issues before the Court. They certainly do not support TPPs' position,

---

[2] Mr. Hughes' Rule 26 report is attached as Exhibit 2 to the Declaration of Kenneth Sumner in Support of Motion to Exclude Experts Dennis Connolly and Robert Hughes [Docket No. 682-2], and referred to hereinafter as the "Hughes Report."

[3] Hughes Report, at 31.

and Mr. Hughes' ultimate conclusion, that Granite State has a duty to defend TPPs.

TPPs' contention that Mr. Hughes "does not tell the court how it should interpret the policies or what the law requires of Granite [State]" is, again, inconsistent with Mr. Hughes' written report. In his professional opinion, "the Granite State umbrella definition of 'ultimate net loss' provides that the umbrella will pay defense costs."[4] Mr. Hughes also offers his interpretation of the "Supplemental Defense" provision and the "sudden and accidental" pollution exclusion. Mr. Hughes tells the Court what each of these provisions means, and how he interprets them. The fact that he does not tell the Court that it should adopt his interpretation is a distinction without a difference.

Mr. Hughes' opinions on the ICSOP policies are equally devoid of any factual analysis. Again, he begins by stating the obvious, and then offers his interpretation of the quoted policy language. Mr. Hughes offers his ultimate conclusions and interpretation of the coverage afforded by the ICSOP policies:

> In summary, therefore, the ICSOP policy agrees to:
>
> Pay defense costs;
>
> Continue in force as underlying in the event of the exhaustion of the underlying insurance;
>
> Provide a defense in the event that there is no underlying insurance; and
>
> Follow form to the underlying insurance and, in the event that the underlying coverage provides greater "protection and indemnity" than does the umbrella form, indemnify the insured upon the same terms and conditions as provided by the underlying.[5]

The only "fact" discussed by Mr. Hughes is the fact of the existence of the Granite State and ICSOP policies themselves. There is not one mention of any fact from the underlying claims against TPPs, nor any analysis applying those facts to the coverage

---

[4] Hughes Report, at 33.
[5] Hughes Report, at 38-39.

afforded under those policies. Since his report does not offer any insight to help the Court understand the evidence or to determine a fact at issue, Mr. Hughes' legal conclusions are improper expert testimony under Federal Rule of Evidence 702(a).

### C. Extrinsic Evidence Cannot Be Used to Interpret Insurance Provisions

TPPs further contend that Mr. Hughes' report provides "his expert opinion as to what particular clauses signal about the intent of the parties in constructing a complex excess level insurance scheme." But TPPs ignore well-settled Oregon law that "extrinsic evidence of the parties' intent is not part of the interpretation of an insurance policy." *Emplyers Ins. of Wausau v. Tektronix, Inc.*, 211 Or.App. 485, 505, 156 P.3d 105, 117 (2007). The parties' intent is determined by the terms and conditions of the policy. *Interstate Fire v. Archdiocese of Portland*, 318 Or. 110, 117, 864 P.2d 346 (1993). The policy's definitions controls its interpretation. *Andres v. American Standard Ins. Co. of Wisconsin*, 205 Or.App.419, 423-24, 134 P.3d 1061, 1063 (2006). Only if the policy does not define the terms in dispute does the court consider assumptions about "ordinary meaning" and other aids to construction. *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 307-08, 985 P.2d 1284 (1999). Neither TPPs nor Mr. Hughes identify any bases for why his testimony regarding defined terms, such as "ultimate net loss," is necessary or helpful to the Court. Mr. Hughes does not raise any ambiguity in the policy terms. Rather, as Mr. Hughes admits, the meaning of the insurance provisions "is perfectly clear."[6] Therefore, Mr. Hughes' opinions as to the interpretation of the policy terms, and to the duty to defend, is impermissible.

### D. Mr. Connolly's Report Only Contains Improper Legal Conclusions as to ICSOP

---

[6] Hughes Report, at 38.

Great American contends Mr. Connolly does not assert any legal conclusions.[7] Rather, Mr. Connolly only "explains how an experienced claim handler would treat the TPPs' claims," and not how a judge should interpret the policies. However, only a cursory review of Mr. Connolly's report shows the absurdity of Great American's contention. The headings in Mr. Connolly's report are as follows:

> *D. The Insurance Company of the State of Pennsylvania Owes a Share of TPPs' Defense Costs*
>
> **1. ICSOP Has a Duty to Defend TPPs Pursuant to its Umbrella Policies Sitting Above Primary Policies Issued by the Insolvent Carrier Home.**
>
> **2. ICSOP Is Obligated to Pay Defense Costs as Ultimate Net Loss.**[8]

Mr. Connolly's opinion is conspicuous and clear: ICSOP has a duty to defend and must pay defense costs. It strains all logic and reason that Great American now asserts Mr. Connolly did not opine about the duty to defend, a legal conclusion.

Once the quoted policy language and objective statement of the policy numbers and policy periods are stripped away from his report, Mr. Connolly offers only the following three paragraphs of "expert" insight as to the ICSOP policies:

> 65. ICSOP's designee testified that ICSOP is required to defend its insured, pursuant to this defense endorsement, whenever (1) a claim is covered by the ICSOP policy and (2) "there be no underlying insurance." [Citation omitted]. According to the testimony of ICSOP's designee, "there by no underlying insurance" when the underlying insurance is "not available." [Citation omitted.][9]
>
> 66. Home is insolvent and has been since before 2008. [Citation omitted.] Therefore, according to ICSOP's designee, the primary policies issued by Home are not available to TPPs to pay claims and ICSOP has a duty to

---

[7] Mr. Connolly's Rule 26 report is attached as Exhibit 1 to the Declaration of Kenneth Sumner in Support of Motion to Exclude Experts Dennis Connolly and Robert Hughes [Docket No. 682-1], and referred to hereinafter as the "Connolly Report."
[8] Connolly Report, at 24-25.
[9] Connolly Report, at 24-25.

>    defend.[10]
>
> 68. An experienced claim handler would conclude that ICSOP has a duty to contribute to TPPs' defense costs as part of Ultimate Net Loss.[11]

These three paragraphs are the only opinions expressed by Mr. Connolly as to ICSOP. Mr. Connolly's opinion is similar to the expert declaration in *Maffei v. Northern Ins. Co. of New York*, 12 F.3d 892 (9th Cir. 1993) (applying California law). In that case, the insurer moved to exclude the insured's expert's declaration that a "hostile fire" had occurred. In excluding the declaration, the Ninth Circuit reasoned:

> First, "hostile fire", as discussed above, is not ambiguous. Second, Holtom did not specifically testify as to custom and usage. He described his background, recited the policy language, and then simply stated:
>
>> Based on my experience and expertise, as indicated above, it is my opinion that the "vapor cloud" generated by sodium hydrosulfite in a metal drum on September 16, 1989, constituted a hostile fire as defined in Endorsement CG 00 41 05 86, and that the policy exclusion f(1) does not apply.

*Id.* at 898-99.

By comparison, Mr. Connolly quotes policy language and then concludes:

> Based on my industry experience and the documents I reviewed, I believe that an experienced claim handler would conclude the following:
>
>> ICSOP issued umbrella policies to NWMIW that sit above policies issued by the insolvent carrier Home for July 1, 1975 to July 1, 1978. Because Home is insolvent, ICSOP is required to participate in the defense with the primary insurers.[12]

Contrary to Great American's strained explanation, Mr. Connolly does not make any attempt to testify about "custom and usage." He does not provide any "expert" analysis based on his experience about why an experienced claim handler would handle

---

[10] Connolly Report, at 25.
[11] Connolly Report, at 25-26.
[12] Connolly Report, at 26.

TPPs' claims. He does not provide any analysis, expert or otherwise, as to any "fact" at issue to aid this Court in its role as trier of fact. Instead, Mr. Connolly offers his conclusion, without any explanation, that Mr. Fine's usage of "not available" means insolvent policies.[13] The only fact that Mr. Connolly provides, and that ICSOP does not dispute, is that Home Insurance Company was placed in liquidation by order of the Merrimack County Superior Court on June 13, 2003.[14]

Mr. Connolly's report contains nothing but improper legal conclusions as to ICSOP. As such, his impermissible opinions should be stricken.

### E. Mr. Connolly's Opinion That an Experienced Claim Handler Would Know That ICSOP Has a Duty to Defend Necessarily Presumes a Duty to Defend Which Has Not Been Determined By This Court

In an attempt to hide his true conclusion that ICSOP has a duty to defend, Mr. Connolly couches this legal conclusion in terms of what "an experienced claim handler" should know. He does not offer any analysis of why an experienced claim handler would conclude that ICSOP has a duty to defend, only that the claim handler would know it. This conclusion is problematic since it presumes that ICSOP has a duty to defend. Great American cannot hide the legal conclusion offered by Mr. Connolly by dressing it up as an opinion that ICSOP should have shared his predicate conclusion that a duty to defend existed. As indicated in the opening brief on this motion, the Court is charged with interpreting the contracts at issue. It would be reversible error for the Court to rely on an outside expert's opinion as to how those contracts operate under Oregon law. As such, the reports and opinion must be excluded. In addition, Mr. Connolly's opinion goes to the state of mind or conduct of the insurer which is not at issue in this case. Whether an experienced claim handler would conclude ICSOP has a duty to defend is irrelevant to whether ICSOP does, in fact, have a duty to defend.

---

[13] Connolly Report, at 24-25.
[14] Connolly Report, at 25.

As stated above, extrinsic evidence to interpret policy language should be excluded. *Emplyers Ins. of Wausau v. Tektronix, Inc.*, 211 Or.App. 485, 505, 156 P.3d 105, 117 (2007). Only where a policy term is undefined, should the court look to other aids to construction. *Andres v. American Standard Ins. Co. of Wisconsin*, 205 Or.App.419, 423-24, 134 P.3d 1061, 1063 (2006). Here, Mr. Connolly offers no aid to construction whatsoever. He merely quotes policy language, and injects his interpretation of those terms through conclusory statements on the ultimate legal issue.

## IV.  CONCLUSION

For the foregoing reasons, and as explained in its motion, Granite State and ICSOP respectfully request that this Court exclude the expert opinions of Mr. Connolly and Mr. Hughes. Should this Court agree with the positions asserted in this motion, Granite State and ICSOP agree to withdraw the rebuttal report of Mr. Windt.


DATED: June 15, 2015

> SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC
>
> /s/ *Kenneth H. Sumner*
> Kenneth H. Sumner, pro hac vice
> ksumner@spcclaw.com
> W. David Campagne, pro hac vice
> dcampagne@spcclaw.com
> Two Embarcadero Center, Suite 1410
> San Francisco, California  94111
> Tel.: (415) 352-6200; Fax: (415) 352-6224
>
> Attorneys for GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA