IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, a Pennsylvania Corporation,<br><br>              Plaintiff,<br><br>      v.<br><br>THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; et al.,<br><br>              Defendants.<br><br>THE MARINE GROUP, LLC, a California limited liability company, as affiliated with Northwest Marine, Inc.; et al.,<br><br>              Third-Party Plaintiffs,<br><br>      v.<br><br>AGRICULTURAL INSURANCE COMPANY and AGRICULTURAL EXCESS AND SURPLUS INSURANCE COMPANY, each an Ohio Corporation,<br><br>              Third-Party Defendants. | 3:08-cv-1375-AC<br><br>OPINION AND ORDER |

Page 1 - OPINION AND ORDER

**ACOSTA, Magistrate Judge:**

This lawsuit concerns the alleged obligations of numerous insurance companies to defend and indemnify third-party plaintiffs The Marine Group, LLC; Northwest Marine, Inc.; Northwest Marine Iron Works; and BAE Systems San Diego Shop Repair, Inc. ("Third-Party Plaintiffs"); for costs incurred in connection with the assessment, removal, and remediation of hazardous materials released at the Portland Harbor Superfund Site. Phase I of trial in this case is scheduled to occur in November 2015. The Phase I trial will resolve each identified party's duty to defend. Determining each party's duty to defend requires the court to identify specific insurance policies, construct lost policies and construe their terms, fix the time period for which each policy provided coverage, determine the existence and applicability of exclusions, and determine the obligations of excess and umbrella insurers.

In accordance with the court's prior scheduling orders, the parties identified expert witnesses and exchanged expert witness reports and deposed experts regarding the Phase I Trial issues. Thereafter, Third-Party Plaintiffs and four insurers – Granite State Insurance Company, Insurance Company of the State of Pennsylvania ("ICSOP"), Century Indemnity, and St. Paul Fire & Marine Insurance Company – each filed motions to exclude some or all of one or more expert witness's testimony. Collectively, the motions put in issue the testimony of five expert witnesses: Dennis Connolly, Robert Hughes, Barry Lapidus, James Robertson, and Allen Windt.

This opinion and order resolves the pending motion to strike the expert testimony of two witnesses, James Robertson and Barry Lapidus. The specific motion is Third-Party Plaintiffs' Motion to Strike James Robertson as Improper Rebuttal Expert and Motion to Strike Barry

Lapidus as Untimely Disclosed Expert (Dkt. No. 705). The court will resolve the remaining pending motions to strike or exclude expert witnesses (Dkt. Nos. 681, 683, 709, and 714), in a separate opinion.

I. Motion to Strike James Robertson as Improper Rebuttal Expert.

**RULING: GRANTED.**

The identification of "lost policies" and their coverage provisions is one of the issues to be tried in the Phase I trial. In preparation for the trial, the parties were to simultaneously disclose expert witnesses regarding the lost policy issue on March 10, 2015. (*See* Dkt. No. 607, at ¶¶ 3, 5, modified by Dkt. No. 644, ¶ 1). On that date Third-Party Plaintiffs listed as their expert witnesses Robert Hughes and Dennis Connolly, both of whom are to give testimony on the lost-policy issue. St. Paul listed no expert witness of its own on the lost-policy issue.

The court's scheduling order also required the parties to disclose rebuttal experts on April 10, 2015, and on that date St. Paul listed Robertson as a rebuttal expert witness. Third-Party Plaintiffs argue Robertson's report actually contains St. Paul's case-in-chief on the critical lost-policy issue and, thus, Robertson is not a proper rebuttal witness. They assert St. Paul's "apparent strategy was to withhold its expert reports until the rebuttal stage so as to flush out [Third-Party Plaintiffs'] arguments and to deprive [Third-Party Plaintiffs] of an equal rebuttal opportunity." They argue this tactic allowed St. Paul to "tailor" its expert testimony and deprived their expert of the opportunity to rebut St. Paul's lost-policy theories. Third-Party Plaintiffs ask the court to strike the Robertson report.

St. Paul contends it timely filed a proper rebuttal report. It notes Third-Party Plaintiffs have the burden of proof on the lost-policy issue and they designated experts to support their burden. Robertson's rebuttal report – which St. Paul timely filed – directly responds to the points made in the Connolly and Hughes reports, the exact purpose of a rebuttal report. St. Paul observes that the court's October 28, 2014 Case Management Order contained no date for serving rebuttal reports, and no party objected to St. Paul's suggestion the parties follow FRCP's 30-day rule for serving rebuttal reports. Finally, St. Paul argues Third-Party Plaintiffs are not prejudiced by Robertson's report because sufficient time remained to depose Robertson and for Third-Party Plaintiffs' experts to supplement their own reports.

The court's October 28, 2014 Case Management Order specified: "[a]ll Identified Parties shall designate any experts on any issues covered by this order and serve disclosures on all parties by February 23, 2015." (*See* Dkt. No. 607, at ¶ 3.) The court extended this deadline to March 10, 2015. (*See* Dkt. No. 644, at ¶ 1.) One of the issues covered in the Case Management order is "lost policy issues relating to the duty to defend or to reimburse or otherwise pay defense costs between identified parties." (*See* Dkt. No. 644, at ¶ 5.)

First, St. Paul was permitted to file an expert rebuttal report and it filed Robertson's report on the agreed date for rebuttal reports. Third-Party Plaintiffs do not refute St. Paul's assertion that the parties, by informal agreement, provided for rebuttal expert disclosures in accordance with Federal Rule of Civil Procedure 26(a)(2)(D). Thus, St. Paul complied with the parties' agreement and the rule's deadline.

Second, and the primary question to resolve, is whether Robertson's rebuttal report in fact is a true rebuttal report or, as Third-Party Plaintiffs assert, an initial expert report merely labeled as a rebuttal report. Federal Rule of Civil Procedure 26(a)(2), entitled "Disclosure of Expert Testimony," does not distinguish between initial and rebuttal experts and imposes no requirement that a rebuttal expert also have been an initially disclosed expert. Thus, St. Paul properly could offer Robertson as a rebuttal expert even though it did not use him as an initial expert. Rule 26's only constraint on rebuttal expert evidence is found in subsection (a)(2)(D)(ii), which defines a rebuttal report as one "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[.]"

Case law decisions have developed the reach and limits of Rule 26 (a)(2)(D)(ii)'s definition of rebuttal evidence. In *R & O Construction Company v. Rox Pro International Group, LTD*, No. 2:09-cv-017490-LRH-LRL, 2011 WL 2923703 (D. Nev. July 18, 2011), the court surveyed instructive cases to identify factors relevant to evaluating whether an expert has submitted a proper rebuttal report:

> Fed. R. Civ. P. 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. *TC Sys. Inc. v. Town of Colonie, NY*, 213 F. Supp .2d 171, 179 (N.D.N.Y. 2002). Rebuttal expert reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 389444 (N.D. Ill. Sep. 30, 2010) (quoting *ABB Air Preheater, Inc. v. Regenerative Environmental Equip., Inc.*, 167 F.R.D. 668, 669 (D.N.J. 1996). Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report. *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008). They are not, however, the proper place for presenting new arguments. *1-800 Contacts, Inc. v. Lens. com, Inc.*, 755 F. Supp. 2d 1151, 1167 (D. Utah 2010);

> *see LaFlamme v. Safeway, Inc.,* 2010 WL 3522378 (D. Nev. Sep. 2, 2010); *cf. Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.") (citation omitted). "If the purpose of expert testimony is to 'contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one' " *Amos v. Makita U.S.A.,* 2011 WL 43092 at *2 (D. Nev Jan. 6, 2011) (quoting *In re Apex Oil Co.,* 958 F.2d 243, 245 (8th Cir. 1992)); *see also Morgan v. Commercial Union Assur. Cos.,* 606 F.2d 554, 556 (5th Cir.1979); *LaFlamme,* 2010 WL 3522378 at *3. Rather, rebuttal expert testimony "is limited to 'new unforeseen facts brought out in the other side's case.' " *In re President's Casinos, Inc.,* 2007 WL 7232932 at * 2 (E.D. Mo. May 16, 2007) (quoting *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679, 685 (5th Cir. 1991)).
>
> Under Rule 37(c)(1), "A party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." This is an either/or standard; non-disclosure must be either substantially justified or harmless to avoid being excluded under the Rule. *Galentine v. Holland America LineWestours, Inc.,* 333 F. Supp. 2d 991, 993 (W.D. Wash. 2004) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001)) (other citation omitted). "The sanction is automatic and mandatory unless the sanctioned party can show that its violation . . . was either justified or harmless." *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998); *see also Yeti by Molly,* 259 F.3d at 1107.

*R & O Construction Company,* 2011 WL 2923703, at *2-3. *See also Clear-View Technologies, Inc. v. Rasnick,* Case No. 13-cv-02744, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (citing *R & O Construction* and summarizing the standard for evaluating whether a rebuttal expert report is proper). The case decisions make clear the court should consider and weigh all of these factors to determine whether an expert's report is a proper rebuttal report.

Robertson's report is not a proper rebuttal report. First, Robertson's report addresses anticipated evidence and does not refute unforeseen theories. St. Paul clearly knew establishing

the existence and terms of lost policies would be a fundamental issue for Phase I trial, and also knew the parties would designate experts on Phase I trial issues. The court's Case Management Order – the content of which the parties jointly proposed – explicitly so states. (*See* Dkt. No. 607, at ¶¶ 3, 5.) Third-Party Plaintiffs' use of experts to identify and construct the terms of the alleged policies was not merely foreseeable, it was to be expected.

St. Paul expected Third-Party Plaintiffs to offer such evidence because in its February 16, 2010 Answer, Affirmative Defenses, and Counterclaim (Dkt. No. 161), St. Paul asserted affirmative defenses against such theories. For example, St. Paul's Third Affirmative Defense asserts:

> In the event that Third-Party Plaintiffs prove the existence, terms, and conditions of a contract of insurance issued by St. Paul, their claims may be precluded by the applicable provisions, terms, definitions, conditions, endorsements, limitations, and/or exclusions of any such policy.

(*See* Dkt. No. 161, at p. 7.) Throughout Robertson's 28-page rebuttal report he identifies and opines on the meaning and significance of the terms, conditions, and definitions in the alleged policies, and discusses the significance of the presence or absence of exclusions and endorsements to the policies Connolly and Hughes construct in their respective reports. All of Robertson's evidence is exactly what St. Paul knew more than five years ago it must present at the time of trial. Merely because Robertson organized his report in reference to the points made in the Connolly and Hughes reports does not, in this context, compel the conclusion that his report is a proper rebuttal report that responds to unforeseen theories.

\\\\\

Second, St. Paul's affirmative defenses place upon it the burden of proving those affirmative defenses, and Robertson's report provides evidence to support most of St. Paul's affirmative defenses. St. Paul's Third, Fifth, Sixth, Seventh, Eighth, Tenth, and Thirteenth through Twenty-Fourth Affirmative Defenses each assert a bar to Third-Party Plaintiffs' claims or recovery based on the language of the alleged policies. Proving one or more of these nineteen affirmative defenses necessarily requires St. Paul to establish the existence of one or more alleged lost polices, construct the terms of those policies, and then interpret the terms of those policies – points which Robertson discusses throughout his report. An expert rebuttal report that "speaks directly" to a party's affirmative defenses is not considered proper rebuttal. *See Clear-View Technologies*, 2015 WL 3509384, at *3 (striking defendants' expert rebuttal report in part because "the report speaks directly to an issue on which Defendants bear the burden of proof, and cannot be properly construed as a rebuttal report").

Third, Robertson's report presents new arguments, which a rebuttal report may not include. The most notable example is Robertson's discussion of the effects of policy exclusions on the coverage analysis contained in the Connolly and Hughes reports, a subject matter which Robertson repeatedly references in his report. Hughes never mentions policy exclusions in the report's 22 pages devoted to the St. Paul policies. Connolly uses ten pages to analyze the St. Paul policies but does not specifically mention exclusions. Only in a single paragraph, No. 29, contained in his report's general discussion section does Connolly refer to exclusions, and then only to declare that standard CGL policies of the time did not include exclusions for environmental losses.

Page 8 - OPINION AND ORDER

Robertson's analysis of exclusions is not proper rebuttal because he does not merely contradict or rebut the subject matter of the Connolly and Hughes reports. First, except for the one-paragraph general reference in Connolly's report – a reference not specific to the St. Paul policies – Connolly and Hughes do not discuss exclusions or their significance to their respective St. Paul lost-policies analysis. Neither the lost-policies analysis nor the general reference to exclusions in Connolly's report are sufficient to constitute the "same subject matter". *See, e.g., Vu v. McNeil-PPC, Inc.*, No. CV 09-1656 ODW (Rzx), 2010 WL 2179882, at *2 (C.D. Cal. May 7, 2010) ("If the phrase 'same subject matter' is read broadly to encompass *any* possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.' More importantly, such broad reading of Rule 26(a)(2)(C)(ii) will render the scope of the subject matter limitless and will lead to unjust results.") (emphasis in original).

Second, exclusions are the explicit basis of two of St. Paul's affirmative defenses, the Third and the Twentieth. St. Paul has the burden of proof of those affirmative defenses and Robertson's report clearly contains evidence to support those affirmative defenses. St. Paul should have disclosed Robertson as an initial expert, not as a rebuttal expert.

Concluding that Robertson is not a proper rebuttal expert completes only the first of two steps to determine whether, as Third-Party Plaintiffs request, the court should strike Robertson's report. The court also must decide whether St. Paul's failure to disclose Roberts's report is either substantially justified or harmless and, thus, may avoid being excluded under Rule 26(a). *See Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("The sanction is automatic and mandatory unless the sanctioned party can show that its violation . . . was either

justified or harmless."). The court concludes that St. Paul's failure to disclose is neither substantially justified nor harmless.

St. Paul argues substantial justification exists because Robertson's report is a rebuttal report offered to counter the reports of Connolly and Hughes. St. Paul proposed that any rebuttal experts be disclosed in accordance with Rule 26(a)(2)(D)'s 30-day deadline for disclosing rebuttal experts, and neither Third-Party Plaintiffs nor any other party objected to that proposal. Thus, St. Paul concludes, rebuttal reports were proper, the rule controlled the timing of their disclosure, and it timely disclosed Robertson's report.

As previously discussed, Robertson's report is not a proper rebuttal report. Because it is not, St. Paul should have disclosed it with initial expert disclosures. Because the premise of St. Paul's substantial justification argument fails, its substantial justification argument is without basis.

St. Paul argues that even if it should have disclosed Robertson's report as an initial expert report, its untimely disclosure is harmless because Third-Party Plaintiffs can depose Robertson, and Connolly and Hughes can submit supplemental reports to cure any prejudice. This argument is unavailing for two reasons. First, Robertson's report should have been disclosed with all other initial expert reports in accordance with the court's Case Management Order. St. Paul did not do that. Compliance with the court's scheduling orders in this case seven-year-old case is critical to the court's ability to efficiently manage 27 parties and 43 lawyers toward the case's ultimate resolution. One party's non-compliance with deadlines in such a complex case puts all

complying parties at a significant disadvantage and disrupts the carefully designed structure and timing of pretrial filings and disclosures.

Second, because St. Paul produced Robertson's report after Third-Party Plaintiffs produced the Hughes and Connolly reports, Robertson had the opportunity to craft his initial opinions in direct response to each point in those reports. Neither Hughes nor Connolly enjoyed this advantage in preparing their initial opinions. And this is not a minor advantage: lost policies is a central issue in the case and the parties' respective theories of the policies' existence or non-existence is the evidentiary heart of that dispute. Robertson avoided presenting his initial theories and, thus, avoided exposing their weaknesses to rebuttal. Instead, he had the opportunity both to conceal or minimize weaknesses in his opinions which the Connolly and Hughes reports might have revealed, and to directly attack the weaknesses in their respective theories knowing neither would have the opportunity to submit a rebuttal report. St. Paul's resultant advantages, in the circumstances of this case, cannot be adequately balanced by now offering to allow Robertson's deposition and Connolly and Hughes to submit supplemental reports. *See Vu v. McNeil-PPC, Inc.*, 2010 WL 2179882 at *3 ("Here, as a result of Costco's belated disclosure, Plaintiffs are prevented from rebutting any of Costco's expert opinions dealing with matters outside the scope of Dr. Kelly's report because the deadline for disclosing rebuttal experts has passed. This is a hornbook example of sandbagging, a litigation tactic this Court will not tolerate.").

Accordingly, the court strikes Robertson's report, precludes any party from using that report at trial, and precludes Robertson from testifying at trial.

II. Motion to Strike Barry Lapidus as Untimely Disclosed Expert.

**RULING: GRANTED.**

The court's scheduling order required the parties to identify by December 19, 2014, all other parties to whom should be allocated a share of the defense costs (*see* Dkt. No. 607, ¶ 1), and to disclose by March 10, 2015 expert witnesses on that and all other trial issues. (*See* Dkt. No. 607, at ¶¶ 3, 5, modified by Dkt. No. 644, ¶ 1.) Century Indemnity filed its identification of parties on December 19, 2014, and did not identify any of the Third-Party Plaintiffs as a party to whom a share of defense costs should be allocated. St. Paul did list Third-Party Plaintiffs as parties to whom a share of defense costs should be allocated, but did so under its policies and not under Century Indemnity's policies, which policies Third-Party Plaintiffs allege cover a different time period than the St. Paul policies.

Three months later, on March 10, 2015, Century Indemnity served its expert witness disclosures and served a report by Barry Lapidus. In his report and subsequent rebuttal report Lapidus explains why Third-Party Plaintiffs are parties to whom a share of defense costs should be allocated. Third-Party Plaintiffs argue they have been prejudiced by Century Indemnity untimely identifying them as parties to whom a share should be allocated, because they did not obtain expert testimony specific to the Century Indemnity policies and theories.

Century concedes it did not designate Third-Party Plaintiffs as parties to whom a share of defense costs should be allocated, but it contends the court should not strike Lapidus's testimony. It points out St. Paul designated Third-Party Plaintiffs as parties to whom a share of defense costs should be allocated and argues it "relied on St. Paul's designation" to disclose

Lapidus as an allocation expert against Third-Party Plaintiffs. Century Indemnity observes that it timely disclosed Lapidus as an expert, that Third-Party Plaintiffs' experts' rebuttal reports responded to Lapidus's opinion, and that Third-Party Plaintiffs have deposed Lapidus.

The court strikes the Lapidus reports. First, Century Indemnity violated the court's Case Management Order. Paragraph 1 of the directs:

> St. Paul Fire and Marine Insurance Company, Argonaut Insurance Company, Insurance Company of North America, Agricultural Insurance Company, Agricultural Excess and Surplus Insurance Company, <u>Century Indemnity Company</u>, Certain Underwriters at Lloyd's London, Certain London Market Insurance Companies, Insurance Company of the State of Pennsylvania, Water Quality Insurance Syndicate, Employers Mutual Casualty Company, and third-party plaintiffs (the "Identified Parties") <u>shall file and serve on all parties a designation of all insurance policies and all parties</u> they contend must participate in the duty to defend, have an obligation to reimburse or otherwise pay defense costs, or which <u>any Identified Party believes should otherwise be allocated a share of defense costs</u>, on or before December 19, 2014.

(Docket No. 607, at ¶ 1)(underline added). The court's order explicitly required Century Indemnity to designate any party and any insurance policy it believed should be allocated a share of defense costs. Century Indemnity did not designate Third-Party Plaintiffs in its December 19, 2014 designation. (*See* Dkt. No. 624).

As the court already has noted, compliance with its scheduling orders is critical to the court's ability to efficiently manage the case as it moves toward Phase I trial. One party's non-compliance with deadlines in this complex case puts all complying parties at a significant disadvantage and disrupts the carefully designed structure and timing of pretrial filings and disclosures. That is especially true here because only Century Indemnity failed to comply with the court's order to designate all parties to whom should be allocated a share of defense costs.

Second, Century Indemnity contends it "relied" on St. Paul's designation of Third-Party Plaintiffs, but this argument fails for three reasons. First, nothing in the court's Case Management Order allowed any other party to rely on the designation of any other party. Second, even if the Case Management Order could be read to allow reliance on other parties' designation, Century Indemnity's designation did not indicate it would rely on St. Paul's designation. (See Dkt. No. 624, at pp. 3-4, 10.)[1] Third, St. Paul did not designate Third-Party Plaintiffs as responsible for an allocation of defense costs under the Century Indemnity policies. St. Paul instead stated it "also reserves the right, pursuant to ORS 465.480(5) and ORS 465.480(6) and applicable Oregon law, to assert that Third-Party Plaintiffs are responsible for defense fees as an "insurer" for allocation purposes with regard to any relevant uninsured periods that may be identified.") (see Dkt. No. 621, at p. 2).

Third, if Century Indemnity did rely on St. Paul's designation, Lapidus's reports advance a theory not relevant to the St. Paul theory Century Indemnity purportedly adopted. St. Paul asserted Third-Party Plaintiffs must share in the allocation of defense costs as "uninsured" parties under Oregon law, but Lapidus's opinion does not support this theory: he opines Third-Party Plaintiffs must share in the allocation of defense costs because they are "self-insured" parties under the Century Indemnity policies. For allocation purposes under Oregon law, being "self-insured" is critically distinct from being "uninsured, " because an insured party who undertakes a self-insured retention obligation is not an "insurer" under Oregon law and thus is

---

[1] It is unlikely Century Indemnity could have relied on St. Paul's designation, because St. Paul filed its designation only 40 minutes before Century Indemnity filed its designation. (*Compare* Dkt. No. 621, filed at 2:37 p.m., *with* Dkt. No. 624, filed at 3:18 p.m.)

Page 14 - OPINION AND ORDER

not allocated a share of defense costs. (*See, e.g.,* Opinion and Order on Summary Judgment Motions, Dkt. No. 817, at p. 6, ¶ 6.) Thus, Lapidus's opinions are irrelevant to the allocation theory Century Indemnity argues it adopted, and also irrelevant in light of the court's summary judgment ruling rejecting the theory Lapidus advances.

Century Indemnity's failure to designate Third-Party Plaintiffs as parties to whom should be allocated a share of defense costs is prejudicial. Century Indemnity identified five months late Third-Party Plaintiffs as parties to whom a share of defense costs must be allocated. This belated disclosure deprived Third-Party Plaintiffs of five months – one-half the time until trial – to analyze Century Indemnity's allocation theory and retain an expert to address it. Ordinary methods for remedying untimely filings or disclosures might be adequate in ordinary cases, but they are not sufficient in this complex multi-party case involving high financial exposure.

Furthermore, the October 28, 2014 Case Management Order ensured that every Identified Party knew and could rely upon specific dates for the completion of identified tasks, and Century violated that order. As already discussed, compliance with the court's scheduling orders is critical to ensuring the orderly and efficient management of this case. All parties knew the deadline for identifying parties to whom a share of defense costs should be allocated, but only Century Indemnity failed to comply with that deadline.

Federal Rule of Civil Procedure 16(f), entitled "Sanctions," authorizes the court to issue "any just orders" including those authorized under Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney "fails to obey a scheduling or other pretrial order." For the reasons already discussed, striking the Lapidus reports is the appropriate remedy for Century Indemnity's violation of the

Page 15 - OPINION AND ORDER


court's October 28, 2014 Case Management Order. Accordingly, the court strikes the Lapidus initial and rebuttal reports, precludes all parties from using those reports, and precludes Lapidus from testifying at trial.

*Conclusion*

Third-Party Plaintiffs' Motion to Strike James Robertson as Improper Rebuttal Expert and Motion to Strike Barry Lapidus as Untimely Disclosed Expert (Dkt. No. 705) is **GRANTED**. The court strikes the Robertson and Lapidus reports and precludes all parties from using those reports in this case. Robertson and Lapidus are precluded from testifying at trial.

IT IS SO ORDERED.

DATED this 16th day of September, 2015

_____
JOHN V. ACOSTA
United States Magistrate Judge