IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CENTURY INDEMNITY COMPANY,
a Pennsylvania Corporation,

                Plaintiff,

      v.

THE MARINE GROUP, LLC, a California
limited liability company, as affiliated with
Northwest Marine, Inc.; et al.,

                Defendants.

THE MARINE GROUP, LLC, a California
limited liability company, as affiliated with
Northwest Marine, Inc.; et al.,

                Third-Party Plaintiffs,

      v.

AGRICULTURAL INSURANCE
COMPANY and AGRICULTURAL EXCESS
AND SURPLUS INSURANCE COMPANY,
each an Ohio Corporation,

                Third-Party Defendants.

3:08-cv-1375-AC

OPINION AND
ORDER

**ACOSTA, Magistrate Judge:**

*Introduction*

This lawsuit concerns the alleged obligations of numerous insurance companies to defend and indemnify third-party plaintiffs The Marine Group, LLC; Northwest Marine, Inc.; Northwest Marine Iron Works; and BAE Systems San Diego Shop Repair, Inc. ("Third-Party Plaintiffs"); for costs incurred in connection with the assessment, removal, and remediation of hazardous materials released at the Portland Harbor Superfund Site. Phase I of trial in this case is scheduled to occur in November 2015 and will resolve each identified party's duty to defend. To determine each party's duty to defend the court must identify specific insurance policies, construct lost policies and construe their terms, fix the time period for which each policy provided coverage, establish the existence and applicability of exclusions, and determine the obligations of excess and umbrella insurers.

As required by the court's prior scheduling orders, the parties identified expert witnesses, exchanged expert witness reports, and deposed experts regarding the Phase I Trial issues. Thereafter, Third-Party Plaintiffs and four insurers -- Granite State Insurance Company, Insurance Company of the State of Pennsylvania ("ICSOP"), Century Indemnity, and St. Paul Fire & Marine Insurance Company -- each filed motions to exclude some or all of one or more expert witness's testimony. Collectively, the motions put in issue the testimony of five expert witnesses: Dennis Connolly, Robert Hughes, Barry Lapidus, James Robertson, and Allan Windt.

This opinion and order resolves the remaining pending motions to strike the reports of expert witnesses Dennis Connolly and Robert Hughes. The specific motions are:

1. Granite State and ICSOP's Motion to Exclude Experts Robert Hughes and Dennis Connolly (Dkt. No. 681);

2. Century Indemnity's Motion to Exclude Expert Robert Hughes (Dkt. No. 683); and

3. St. Paul's Motion to Exclude Experts Robert Hughes and Dennis Connolly (Dkt. No. 709).[1]

Granite State and ICSOP's motion, Century Indemnity's motion, and St. Paul's motion each ask the court to strike the Connolly and Hughes reports because both experts' reports consist of inadmissible legal conclusions. St. Paul's motion also asserts the court should strike Connolly's and Hughes's testimony because neither expert has the requisite experience or background to give opinions on the policies at issue, and because their opinions are speculative and thus unreliable. The court finds Connolly and Hughes qualified to give the opinions contained in their reports but concludes that portions of their respective reports contain inadmissible legal conclusions that invade the province of the court. Therefore, those portions of Connolly's and Hughes's opinions specifically identified below must be excluded. Accordingly, Granite State and ICSOP's motion, Century Indemnity's motion, and St. Paul's motion are **GRANTED IN PART and DENIED IN PART.**

\ \ \ \ \

---

[1] The court previously issued two opinions (Dkt. Nos. 818 and 820) which resolved motions (Dkt. Nos. 705 and 714, respectively) to strike or exclude the expert reports and testimony of James Robertson, Barry Lapidus, and Allan Windt.

*Standards*

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> © the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 "contemplates a broad conception of expert qualifications." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (emphasis added). Moreover, "the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Id.*

Experience alone can be the basis of admissible expert testimony:

> Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not the sole, basis for a great deal of reliable expert testimony.

FED. R. EVID. 702 advisory committee notes, 2000 Amendment. Where an expert witness relies primarily on experience for his or her qualifications, then the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.*

Page 4 - OPINION AND ORDER

Under Rule 702 the district court is tasked with the gate-keeping function assigned by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (*Daubert I*), to determine the admissibility of expert witness testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147 (1999). "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This usually entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert I*, 509 U.S. at 592-93 (footnote omitted). *Daubert* applies to the testimony of engineers and other experts who possess technical and other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. An expert's "bald assurance of validity is not enough." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*).

Factors to be considered when determining if the testimony is reliable scientific knowledge are whether the theory or technique is generally accepted in the relevant scientific community, whether it has been subjected to peer review and publication, whether it can be and has been tested, whether standards exist to control the technique's operations, and whether the known or potential rate of error is acceptable. *Daubert I*, at 593-94. The inquiry, however, is a flexible one, with the focus solely on the principles and methodology used, not on the conclusions they generate. *Id.* at 594. *See also Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (the district court is "both authorized and obligated to scrutinize

carefully the reasoning and methodology" underlying the expert's testimony); *Tyson v. Oregon Anesthesiology Group, P.C.*, Case No. 03-1192-HA, 2008 WL 2371420, at *15 (D. Or. June 6, 2008) (finding inadmissible expert conclusions that were "vague and inadequately supported with specific, relevant statistical analysis"). Other relevant factors may be considered, and the factors listed in *Daubert* may not be reasonable measures of the reliability of expert testimony in a particular case. *Id.* at 594; *Kumho Tire*, 526 U.S. at 147-153. As the Supreme Court observed, *Daubert's* factors "may or may not be pertinent in assessing reliability. . . . The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* . . . . Too much depends upon the particular circumstances of the particular case at issue." *Kumho Tire*, 526 U.S. at 150 (citations and internal quotations omitted).

A threshold question in determining the admissibility of expert testimony is whether the proffered testimony will assist the trier of fact. *Daubert I*, 509 U.S. at 592. Expert witness testimony is unnecessary unless the subject matter "is beyond the common knowledge of the average lay person." *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (quotation omitted). Thus, "even if [the expert] testimony may assist the trier of fact, the trial court has broad discretion to admit or exclude it." *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (per curiam) (quotation omitted).

Expert testimony that offers legal conclusions rather than opinions about facts generally does not "help the trier of fact to understand the evidence or to determine a fact in issue." Although "[i]t is well-established . . . that expert testimony concerning an ultimate issue is not

per se improper", *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002), and Federal Rule of Evidence 704(a) provides explicitly that expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact," nonetheless "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Mukhtar*, 299 F.3d at 1066 n.10. The Ninth Circuit has observed:

> As a general rule, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). "That said, an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal citations and quotation marks omitted); *see also* Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue").

*Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (italics in original). Because interpretation of insurance contracts present questions of law for the court to decide, *see, e.g., McHugh v. United Service Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("the interpretation of the insurance policy is a question of law for the court"); *St. Paul Fire & Marine Ins. Co., Inc., v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 192 (1996) ("The interpretation of the terms of an insurance policy is a question of law."), expert opinion interpreting an insurance contract or its terms is not admissible. *See, e.g., McHugh,* 164 F.3d at 454 ("[expert] testimony cannot be used to provide legal meaning or interpret the policies as written"); *Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 898-99 (9th Cir. 1993)

(affirming trial court's exclusion of expert declaration that interpreted meaning of policy endorsement rather than opined on "custom and usage" in the industry).

Rulings on the admissibility of expert testimony under Rule 702 are committed to the sound discretion of the trial court. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

## Discussion

The court's task at Phase I trial is contract interpretation, which is a question of law for the court to decide. Specifically, the court will decide the legal question whether any of the insurance policies at issue obligate one or more of the insurers to provide or pay for Third-Party Plaintiffs' defense in the underlying Portland Harbor Superfund Site litigation. The moving parties' motions challenge Connolly's and Hughes's testimony primarily because both witnesses offer legal opinions on the meaning of the insurance policies at issue. St. Paul's motion advances two additional challenges to Connolly's and Hughes's testimony: that both lack the qualifications to give opinions in this case and both experts render opinions that are speculative and thus unreliable.

## I. Qualifications and Reliability.

### A. Connolly.

#### 1. Arguments.

St. Paul observes that Connolly's report describes the "creation of the field of insurance archaeology" and relies on its methods to reconstruct "missing" St. Paul policies, but Connolly admits he is not a member of this field. Connolly relies on six documents and interprets them "through the prism of an 'experienced claim handler,' rather than an underwriter." (Dkt. No.

709, p. 6.) The distinction deprives Connolly of the requisite experience to offer opinions in this case because "an underwriter may be qualified to opine as to certain facts concerning the issuance or terms of an insurance contract; a claim handler is not." (*Id.* at 11.)

In addition, St. Paul asserts Connolly's opinions about Ship Repairer's Liability ("SRL") policies should not be admitted because he "lacks any background in SRL policies on which he can rely to offer helpful, admissible expert opinions." (*Id.* at 12.) St. Paul points out: "Nowhere in his report does Connolly identify any relevant experience in reviewing or interpreting SRL policies, for reasons that became obvious at his deposition – he has no such experience." (*Id.* at 6.) St. Paul cites Connolly's admissions at deposition that he has never written – never even seen – before this case a SRL policy and knows nothing about the development of the language contained in SRL policies. (*Id.* at 12-13.) St. Paul concludes that Connolly's "general knowledge about insurance does not qualify him to provide expert opinion on SRL policies[.]" (*Id.* at 13.)

Great American defendants[2] respond Connolly's testimony is not speculative or based on conjecture. They argue St. Paul's motion conflates the standard for admissibility of expert testimony with the standard for proving the existence of the policies at issue. They further point to a 1980 insurance ledger created by a Northwest Marine employee that documents St. Paul policies issued to Third-Party Plaintiffs during the 1963-64 and 1966-67 policy years. Great American defendants finally note that Connolly also relied on a certificate of insurance St. Paul

---

[2] Third-Party Plaintiffs' opposition brief does not respond to St. Paul's qualification arguments asserted against Connolly.

issued to Northwest Marine for the period February 1957 to February 1960, and observes Connolly applied his fifty years of experience in the insurance industry to explain how this evidence supports his opinion that St. Paul policies covered Third-Party Plaintiffs during the period at issue.

### 2. Analysis.

Connolly is qualified to render opinions in this case and his opinions are not speculative. First, Connolly has based his opinions in part on specifically identified, existing, and relevant documents, and in part on his decades of experience in the insurance industry. Notably, nowhere in St. Paul's motion does it challenge Connolly's general qualifications to provide expert testimony in insurance coverage lawsuits involving business liability insurance policies, their issuance and renewal, or the content of CGL policies available during the 1940s, 50s, and 60s, the time period that includes the years the policies at issue are alleged to have been issued.

Second, Connolly's opinions regarding the SRL policies turn not on that specific form of policy but instead on two larger points: insurance industry practices pertaining to the issuance and renewal of liability policies to businesses, and coverage for environmental liabilities. The factual issue here is whether the insurance policies at issue existed and, if so, their contents. Connolly's report details his long and extensive experience in the insurance industry, including significant and diverse experience with CGL policies, environmental insurance policies, and coverage issues. (*See* Dkt. No. 682-1, pp. 1-5.[3]) In his report Connolly sufficiently explains

_____

[3] Page citations to the Connolly report and the Hughes report reference the electronic docket pagination and not the original pagination of the reports.

how his experience supports his opinions (*see* Dkt. No. 682-1, pp. 17-19), and he makes clear in his deposition that environmental liability coverage provisions are part of SRL policies. (*See* Dkt. No. 710-7, p. 18.) St. Paul fails to identify or explain how SRL policies are unique or even sufficiently distinct from CGL policies such that Connolly's long experience and extensive knowledge do not equip him to render his opinions in this case.

In summary, under Rule 702, Connolly's insurance industry experience is sufficient to qualify him to give his opinions in this case, including opinions SRL policies. St. Paul's challenges to Connolly's opinions more appropriately go to the weight to be given his opinions and not to their admissibility.

### B. *Hughes.*

#### 1. Arguments.

St. Paul asserts Hughes's opinion is based on speculation and conjecture. St. Paul observes that Hughes relies on two insurance policies issued to an entirely different company, Electrical Construction Company of Oregon ("ECCO"), which merged into Third-Party Plaintiff Northwest Marine after the date the two insurance policies had expired. St. Paul contends Hughes thus has "invented coverage" for the period at issue in this case, without citation to or reliance upon any document that predates ECCO's merger into Northwest Marine. Third-Party Plaintiffs respond that St. Paul mistakes Hughes's use of "illustrative hypotheticals" for speculation when, in fact, Hughes's report makes clear he relies on his decades of experience in

the insurance industry to explain why policyholders purchase and maintain umbrella insurance policies.[4]

## 2. Analysis.

Hughes's opinions are not based on speculation or conjecture. St. Paul does not challenge Hughes's general qualifications to provide expert testimony in insurance coverage lawsuits involving business liability insurance policies. Hughes's report describes in detail both his extensive experience in the insurance industry and the methodology he used to opine on the existence, issuance, and terms of the St. Paul policies at issue. (*See* Dkt. No. 682-2, pp. 2-13, 42-49.) Hughes's report also identifies and describes the documents he reviewed from a variety of sources and the significance of those documents and sources in supporting his opinions, and relying on those documents he explains with specificity the basis of his opinions on the existence of each St. Paul policy he concludes existed during the periods in question. (*See id.* at pp. 13-30.) St. Paul's challenges go to the weight to be given Hughes's opinions and not their admissibility.

## II. Legal Conclusions.

Granite State and ICSOP's motion and St. Paul's motion challenge the admissibility of both Connolly's and Hughes's testimony, and Century Indemnity's motion challenges Hughes's testimony. Specifically, the moving parties assert Connolly and Hughes improperly offer legal conclusions concerning the ultimate issues in dispute: the formation, issuance, and existence of

---

[4] Great American defendants' opposition brief does not respond to St. Paul's reliability arguments asserted against Hughes. St. Paul does not challenge Hughes's qualifications.

the policies at issue. The moving parties further contend Connolly and Hughes improperly opine that the policies' terms impose either a duty to defend or a duty to pay defense costs. These are legal opinions on questions of law and not testimony that assists the court in determining facts at issue, the moving parties argue. Because legal opinions invade the province of the court, Connolly's and Hughes's testimony should be excluded. Century supports its motion with citations to three decisions from other courts that excluded Hughes's testimony as improper legal conclusions, and St. Paul cites in its motion one decision that excluded Connolly's testimony as improper legal conclusions.[5] In addition, the moving parties contend Connolly's and Hughes's testimony also should be excluded to the extent it constitutes extrinsic evidence of the contracting parties' intent, because extrinsic evidence of intent is inadmissible under Oregon contract law.

Third-Party Plaintiffs and Great American oppose Granite State and ICSOP's motion and St. Paul's motion, and Third-Party Plaintiffs oppose Century Indemnity's motion. They rely on Connolly's and Hughes's unchallenged decades-long insurance industry experience and background as predicate for their contention these experts offer factual opinions on insurance industry practices in issuing or renewing policies, for including specific terms and conditions, for reconstructing lost policies, for understanding and processing claims under the terms contained

---

[5] Century cites *North American Specialty Insurance Company v. Myers*, 111 F.3d 1273 (6th Cir. 1997); *Plantation Pipeline Company v. Continental Casualty Company*, Civ. Action No. 1:0-CV-2811-WBH, 2008 WL 4737163 (N.D. Ga. July 31, 2008); and *Canal Insurance Company v. Montello, Inc.*, No. 10-CV-411-JHP-TLW, 2012 WL 4891699 (N.D. Okla. Oct. 15, 2012). St. Paul cites *Travelers Indemnity Co. v. Northrop Grumman Corp.*, No. 12 Civ. 3040 (KBF), 2014 WL 464769 (S.D.N.Y. Jan. 28, 2014).

in the policies at issue, and for determining the coverage for which specific types of policies and particular provisions contained within those policies are issued and obtained. They further argue that if the court determines Connolly or Hughes offer legal opinions, the court should exclude only the improper portions of their testimony and leave in place the remainder of their opinions.

The court finds that the Connolly report and the Hughes report each contain both inadmissible legal conclusions and admissible testimony that will assist the court in understanding the factual contentions in this case. The admissible and inadmissible portions of the Connolly report and the Hughes are identified below.

### A. Connolly.

Connolly states Great American retained him to "present expert testimony regarding the issuance, limits, terms and conditions of certain comprehensive general liability ("CGL") and shiprepairer's liability ("SRL") insurance policies at issue in this case." (Dkt. No. 682-1, p. 9.) Subsections III.A. and III.B. of Connolly's report contain foundational context for Connolly's specific opinions is this case: he describes his experience in the insurance industry; the origin and development of CGL policies; the general purposes of CGL policies; and the general structure and interaction of primary, excess, and umbrella insurance policies. (Dkt. No. 682-1, pp. 5-7.) In subsection III.C. Connolly identifies the types of documents used to establish "missing" CGL policies. (Dkt. No. 682-1, pp. 7-8.) In subsection III.D. Connolly sets out insurance industry practices in developing and using "form language" in CGL policies. (Dkt. No. 682-1, pp. 9-10.) Finally, Connolly describes in subsection III.E. the available standardized form CGL policies developed during the 1940s, 50s, and 60s, and how those form policies are

used to establish the coverage terms and exclusions of "missing or incomplete" policies. (Dkt. No. 682-1, pp. 10-11.) All of this factual or fact-based opinion testimony is admissible, because it will help the court understand the parties' competing evidence and determine the contested facts.

Connolly's opinions specific to this case are contained in Section IV (Dkt. No. 682-1, pp. 11-26) of his report, and Section IV sets forth a series of inadmissible legal conclusions. Here Connolly goes beyond merely describing the "issuance, limits, terms and conditions of certain comprehensive general liability ("CGL") and shiprepairer's liability ("SRL") insurance policies at issue in this case." Instead, he interprets policy provisions and gives legal opinions that those provisions impose upon St. Paul, The Water Quality Insurance Syndicate ("WQIS"), and ICSOP a duty to defend and a duty to pay defense costs. These interpretations and conclusions are the court's to make, not Connolly's, and his testimony in these areas is inadmissible.

Proof of this fact is evidenced in the very first subheading of Section IV: "St. Paul Has a Duty to Defend Pursuant to Comprehensive General Liability Policies it Issued to Northwest Marine Iron Works[.]" (Dkt. No. 682-1, p. 11.) The decision whether St. Paul or any other insurer in this case has a duty to defend under any insurance policy is the province of the court; the Ninth Circuit has clearly so held. *See, e.g., Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d at 1058 (an expert witness cannot give an opinion on an ultimate issue of law); and *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d at 1016 (same). Each of the other three subheadings in Section IV announce more inadmissible legal opinions: "St. Paul is Obligated to Pay Defense Costs . . .," "The [WQIS] Issued Policies that

Covered Northwest Marine Iron Works . . . and Obligate [WQIS] to Pay Defense Costs," and "[ICSOP] Owes a Share of [Third-Party Plaintiffs'] Defense Costs". (Dkt. No. 682-1, pp. 17, 20, and 24.) Simply put, Connolly may not testify to his opinions on which insurers owe a duty to defend, a duty to pay or share in defense costs, the meaning of insurance policies generally or their specific provisions, the scope of coverage under a policy, or other similar legal opinions.

The nature of Connolly's opinions here parallels from those found inadmissible in *Travelers Indemnity Co. v. Northrop Grumman Corp.*, No. 12 Civ. 3040 (KBF), 2014 WL 464769 (S.D.N.Y. Jan. 28, 2014). There Connolly had offered among other opinions that the insured's notice to the insurer was sufficient, the insured's notice did not prejudice the insurer, and the insured was entitled to coverage. *Id.* at *5. The court excluded ten of Connolly's twelve opinions because they "impermissibly invade[d] the provinces of the judge and jury, and observed there was "no way [it] could allow a proposed expert" to give these and other proffered opinions. *Id.* After concluding Connolly's remaining opinions were irrelevant, confusing, or unnecessary and a waste of time, the court precluded him from testifying altogether. *Id.* at 5-6. Connolly's opinions in Section IV of his report suffer from the same problems as the opinions he proffered in *Travelers Indemnity.*

Although most of Connolly's testimony in Subsection IV is inadmissible, some portions are admissible. Connolly relies on his experience and industry practice to describe the process of constructing the content of lost policies; the probable policy limits of those policies; the probability that policies were issued for certain years or time periods; the industry practice of maintaining, continuing, and renewing insurance with the same carrier; replaced policy

practices; and insurers' document retention policies. This testimony is admissible because it will assist the court in determining the factual disputes in this case, and the court will allow Connolly to testify at trial on these topics.

B. *Hughes.*

Hughes states Third-Party Plaintiffs and Argonaut Insurance retained him "to determine, if possible, the terms and conditions of liability insurance policies issued to Northwest Marine Iron Works between 1957 and 1972 by St. Paul Fire & Marine Insurance Company." (Dkt. No. 682-2, p. 2.) Hughes adds his task is to also address these specific issues:

> Whether or not the 7/1/82-8/1/85 Century Indemnity policies provide coverage that is equal to "an occurrence based CGL policy that defense or pays defense costs;"

> Whether or not the Granite State policies have a drop-down defense obligation;

> Whether or not the Granite State policies have a pollution exclusion and, if so, what is the breadth of the exclusion; and,

> Whether or not the Insurance Company of the State of Pennsylvania policies have a drop-down defense obligation in the event of the insolvency of the Home Indemnity Company.

(Dkt. No. 682-2, p. 2.) As these assigned tasks demonstrate, Hughes's opinions are not limited to finding the existence of insurance policies he contends St. Paul, Century Indemnity, Granite State, and ICSOP issued; he also presents legal conclusions and interpretations about those opinions. (*See* Dkt. No. 682-2, pp. 14-39.) As to Century Indemnity, Granite State, and ICSOP, Hughes concludes his analysis of each of these insurers' policies with a similar conclusion: that each insurer's policy or policies provide both coverage and a defense obligation. (*See* Dkt. No.

682-1, p. 31 (expressing opinion the Century Indemnity policy "provides comprehensive general liability insurance" including "Environmental Impairment Liability coverage"); Dkt. No. 682-1, pp. 34-35 (expressing opinions the Granite State policies require payment of defense costs and a contingent duty to defend obligation, and the environmental liability exclusion does not apply); and Dkt. No. 682-1, pp. 39-40 (expressing opinions the ICSOP policies require payment of defense costs, "continue in force" if the underlying insurance is exhausted, impose a duty to defend if no underlying insurance exists, and a contingent obligation to "indemnify the insured" in the same manner as the underlying insurance).) The court's previous analysis of Connolly's opinions applies equally to Hughes's proffered opinions: as are Connolly's legal conclusions, Hughes's legal conclusions are inadmissible because his opinions improperly invade the province of the court.

Not all of Hughes's testimony is inadmissible, however. Hughes's analysis of the St. Paul policies also concludes that St. Paul issued five policies collectively covering the period from 1957 to 1972, inclusive. (Dkt. No. 682-2, pp. 14-25.) Hughes's testimony reconstructing the St. Paul policies is admissible, because it will assist the court in understanding the facts underlying a key factual dispute: whether St. Paul issued one or more policies which cover Third-Party Plaintiffs for environmental liability during all or some of the relevant time period. Also helpful in understanding the facts at issue is Hughes's discussion of the interrelationship between primary, excess, and umbrella policies, including "drop down" functions; his discussion of the origin of policy wording;, and his testimony about industry practice in structuring CGL policies on a "vertical" basis. This testimony is admissible as well.

*Conclusion*

Granite State and ICSOP's Motion to Exclude Experts Robert Hughes and Dennis Connolly (Dkt. No. 681), Century Indemnity's Motion to Exclude Expert Robert Hughes (Dkt. No. 683), and St. Paul's Motion to Exclude Experts Robert Hughes and Dennis Connolly (Dkt. No. 709) are **GRANTED IN PART and DENIED IN PART**. The portions of Connolly's and Hughes's respective reports described above are excluded, all parties are precluded from using at trial the excluded portions of their reports, and both witnesses are precluded from giving testimony on the excluded portions at trial.

IT IS SO ORDERED.

DATED this _13th_ day of October, 2015.

JOHN V. ACOSTA
United States Magistrate Judge